UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALVIN HOWARD                                        CIVIL ACTION

VERSUS                                               NUMBER: 13-4811
                                                      c/w 13-4811, 13-6407

OFFSHORE LIFTBOATS, LLC, ET AL.                      SECTION: "E"(5)


**ORDER AND REASONS**


Before me is a Motion for Costs and Sanctions brought against Defendant, Offshore

Liftboats, LLC ("OLB") by Plaintiff, Calvin Howard.  (Rec. doc. 178).  OLB has filed an

Opposition to that Motion (rec. doc. 184) and, on February 25, 2105, I heard oral argument

from counsel for both parties on the matter.  (Rec. doc. 188).  Based upon the pleadings and

attachments thereto (in particular the deposition transcripts of Calvin and Raymond

Howard and Sylvester Richardson), and the arguments of the parties, the Court rules as

follows.

I.      BACKGROUND

This is a Jones Act personal-injury case arising from an alleged incident on or about

May 16, 2013.  It is alleged that Plaintiffs, Calvin and Raymond Howard, were injured when

they fell from a personnel basket to the deck of the M/V CONTENDER, a vessel owned by

Defendant, K&K Offshore, LLC ("K&K").  (Rec. docs. 1, 2 in 13-CV-4811).  Each of the

plaintiffs filed separate lawsuits, which were consolidated by the District Judge.  (Rec. doc.

15 in 14-CV-1188).  Both Plaintiffs allege in their respective complaints that they were

injured when being transferred from K&K's vessel onto a deck barge owned by their

employer, OLB.

Defendant, OLB is represented in this matter by Robert Reich ("Reich").  Plaintiff, Calvin Howard (who is the movant on the present motion) is represented by Stephen Chouest and Ryan Zehl ("Zehl"), the latter of whom was admitted to represent Calvin Howard *pro hac vice.*  (Rec. doc. 11).

Despite the vintage of these consolidated matters, Plaintiff's counsel informs the Court that only three depositions had occurred as of the filing of his motion for sanctions – the aforementioned depositions of each Plaintiff and Sylvester Richardson, the operator of the crane at the time of the accident.  While Plaintiff's request for sanctions is said to be based upon Reich's conduct before and during the Sylvester Richardson deposition, counsel also cites to Reich's conduct in the depositions of the two Plaintiffs, Calvin and Raymond Howard, complaining of his "speaking objections, mischaracterization of facts, intimidation and overall conduct."  (*Id.* at 4).  Each of these depositions, and the conduct of counsel therein, will discussed separately below.

## II.    LAW AND ANALYSIS

### A.  Relevant Law

There are numerous mechanisms by which district courts exercise sanction powers, including the Federal Rules of Civil Procedure (through Rules 11, 26, 30 and/or 37); 28 U.S.C. §1927; and the inherent power of the courts to manage their own proceedings and to control the conduct of those who appear before them.  Regardless of the source, it is widely accepted that the primary purpose of sanctions is to deter frivolous litigation and abusive tactics.  Sanctions seek to deter both the culpable attorney and members of the bar in general.  *See, e.g., Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 126-27 (1989) (the primary purpose of Rule 11 is deterrence, not compensation); *Fred A. Smith*

*Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988)("the most important purpose of Rule 11 sanctions is to deter frivolous litigation and the abusive practices of attorneys"); Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse §47(A) (2d ed.) (the purpose of Rule 37 is four-fold: "(1) penalizing the culpable party or attorney; (2) deterring others from engaging in similar conduct; (3) compensating the court and other parties for the expense caused by the abusive conduct; and (4) compelling discovery"); *Id.* at §20 (the purpose of 28 U.S.C. §1927 is to deter unnecessary delays in litigation).

One court recently put it more succinctly: "The purpose of court-imposed sanctions is to stop reinforcing winning through obstruction." *Security National Bank of Sioux City, Iowa v. Abbott Laboratories*, 299 F.R.D. 595, 597 (N.D. Iowa 2014).

Whether a district court wields its sanction powers under the Federal Rules of Civil Procedure, 28 U.S.C. §1927, or its inherent power, it does so at its "broad discretion." *Topalian v. Ehrman,* 3 F.3d 931, 934 (5th Cir. 1993). "The discretion vested in the trial court is granted so its thoughtful exercise will carry out the educational and deterrent functions of the rule." *Jennings v. Joshua I.S.D.*, 948 F.2d 194, 199 (5th Cir. 1991), *cert. denied*, 504 U.S. 956 (1992).

Because the present motion concerns conduct of counsel during depositions, it is properly analyzed under Rule 30 and the cases construing it. Rule 30(c)(1) provides that "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence...." Fed.R.Civ.P. 30(c)(1). "During the taking of a deposition the witness has, in general, the same rights and privileges as would a witness testifying in court at a trial." 8A Wright, Miller and Marcus, Federal Practice and Procedure §2113 (2d ed. 1994).

3

It is well-established – and should be equally well-understood by federal practitioners – that:

> [a]s officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition. A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent. In either case, it is to be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom. Thus, the witness is placed under oath and a court reporter is present. Conduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at a deposition .... A deposition is not to be used as a device to intimidate a witness or opposing counsel so as to make that person fear the trial as an experience that will be equally unpleasant, thereby motivating him to either dismiss or settle the complaint.

> *Bordelon Marine, Inc. v. F/V KENNY BOY*, No. 09-CV-3209, 2011 WL 164636 at *5 (E.D. La. Jan. 9, 2011)(*citing Ethicon Endo–Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995)).

Under Rule 30(d)(2),

> [t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent.

> Fed.R.Civ.P. 30(d)(2).

As will be discussed in detail below, Reich ran afoul of all these rules in each of the three depositions at issue here in an astounding variety of ways. His conduct is all the more troublesome in light of the numerous occasions on which he has been sanctioned by other judges of this district for similar – and in some cases identical – conduct.

For instance, in *Bordelon Marine, Inc. v. F/V KENNY BOY*,[1] Magistrate Judge Knowles sanctioned Reich for a multitude of transgressions in two depositions, including behavior that he has repeated here. The conduct Judge Knowles found sanctionable in *Bordelon* included objecting "all too frequently," with the "majority" of those objections lacking a valid basis; failing to treat the deponents in that case "as he would have been required to treat them at a trial in a courtroom"; "storming out of the room"; improperly instructing witnesses not to answer questions[2] and being an "instigator of discovery disputes" that continued for "pages upon pages of the deposition transcripts." *Id.* at *5-6. Judge Knowles found that Reich's conduct "impeded and frustrated the fair examination of the two deponents" in that case and sanctioned Reich for conduct that crossed the bounds of zealous advocacy. *Id.* at *6. In so deciding that matter some four years ago, Judge Knowles observed (as I must here) that "this is not the first time that Reich's behavior at a deposition has been called into question and resulted in the imposition of sanctions." *Id.* at *6 n. 3 (*citing Landers v. Kevin Gros Offshore, L.L.C.*, No. 08-CV-1293, 2009 WL 2046587 (E.D. La. July 13, 2009)).

In *Landers,* Magistrate Judge Shushan of this court was confronted with a motion for sanctions against Reich and his client arising out of Reich's conduct in multiple depositions of the plaintiff in that case. After citing much of the same authority and caselaw that I have cited herein, Judge Shushan found that Reich's conduct in those depositions was sanctionable in a number of ways. In so finding, Judge Shushan wrote:

---

[1]  2011 WL 164636 (E.D. La. Jan. 9, 2011).
[2]  Reich emphasized at the hearing on this motion that he was not guilty, nor had he been accused, of instructing witnesses not to answer questions in this case. That is the **only** category of conduct for which he was sanctioned in *Bordelon* that he did not engage in here, although that fact escapes Reich, who insisted at the hearing that Judge Knowles "didn't sanction me for objections. To the contrary, he sanctioned me because I took my witness out and terminates the deposition." Transcript at 16 (rec. doc. 191). This is simply not true and one need only read the case to know it.

> [t]he behavior of [Reich] in the deposition was improper. He
> repeatedly interrupted the witness and would not let him
> complete his answer and provide his explanation. His tone of
> voice can best be described as yelling. Many of his questions
> were improper. The instruction by [opposing] counsel not to
> answer certain questions was improper, Fed R. Civ. P. 30(c)(2),
> but, under the circumstances, it was understandable. The
> record demonstrates that [Reich] repeatedly failed to conduct
> his examination of [Plaintiff] as he would at the trial and
> denied him the same rights and privileges due a witness
> testifying in court at a trial. Sanctions will be imposed.

> *Landers v. Kevin Gros. Offshore,*
> *L.L.C.*, No. 08-CV-1293, 2009 WL
> 2046587 at *4 (E.D. La. July 13, 2009).

In addition to these two cases in which Reich was sanctioned for what I consider to be transgressions identical to those in this case, I am aware of at least one other recent instance in this district in which Reich was sanctioned by Chief Magistrate Judge Wilkinson for signing an unnecessary discovery motion, which Judge Wilkinson described as "another motion of the type that I've seen Mr. Reich file regularly for 19 years now." *See XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, No. 12-CV-2071, 2014 WL 2155242 at *2 n. 17 (E.D. La. May 21, 2014)(Vance, J.)(affirming Magistrate Judge Wilkinson's order assessing sanctions).[3]

Notably, in the three cases cited above, the courts sanctioned Reich personally, declining to sanction his client.

Against this backdrop, I turn to the specific conduct at issue in this motion.

---

[3] Judge Wilkinson's comments are found at in rec. doc. 169-3, p. 7 in No. 12-CV-2071.

B.  *Disclosure of Sylvester Richardson's Termination*

Before discussing the conduct of counsel during the aforementioned depositions, I first address the arguments regarding the eleventh-hour disclosure that the employment of deponent and former OLB employee, Sylvester Richardson ("Richardson"), had been terminated by OLB.  Plaintiff argues that he is entitled to costs and sanctions against OLB because it terminated Sylvester's employment three weeks before the subject deposition, without ever informing Plaintiff's counsel of that fact.  The parties agree that counsel was first informed of this development the morning of the deposition, along with related news that the deponent would only be available for two and a half hours of testimony.  Plaintiff complains that this news should have been shared sooner, given that all counsel knew Plaintiff's counsel was travelling from Houston to New Orleans for the deposition.  In particular, Plaintiff points to OLB's ongoing obligation to supplement its previous discovery responses and suggests that OLB's failure to do so, after originally stating that Richardson was still employed by OLB, was a sanctionable violation of the Federal Rules of Civil Procedure.  (Rec. doc. 178-1).

In response, counsel for OLB, Mr. Reich, suggests that it was Plaintiff's counsel who "violated" the Federal Rules by failing to subpoena Richardson, thus compelling his attendance at the deposition for longer than the two and a half hours he appeared.  OLB's argument is not convincing, particularly in light of Reich's insistence on the record of the Richardson deposition that he had "gone to a great deal of effort to get [Richardson] to voluntarily appear" at the deposition.  It is clear to me that Plaintiff's counsel was understandably operating under the impression that, as an employee of OLB – a party to the lawsuit – it was unnecessary to subpoena Richardson for attendance at the deposition,

particularly given Reich's admitted efforts to have the witness appear voluntarily.  This is a common arrangement among litigants and only became a problem here because counsel were unaware that Richardson had been terminated.

As to the timing of that disclosure, I cannot say that OLB or Reich should be sanctioned, based on the record before me.  Reich stated at the hearing that he learned of this fact only the night before the deposition (or sometime shortly before the deposition when it was dark).  (Tr. at p. 8).[4]  In a more perfect world, OLB would have, through counsel, communicated this fact more timely, but the record here is insufficient to support a sanction for that omission, particularly given Reich's representation to the Court that he did not know of the development until the deposition was imminent.  Moreover, I do not find that this late notice, in and of itself, is what caused the parties to have to reconvene the deposition.  Rather, it was the conduct of counsel during the limited amount of time that Richardson appeared – in particular that of Mr. Reich – that wasted much of the two and a half hours during which Richardson made himself available.

C.  *Reich's Deposition Conduct*

Counsel for Plaintiff attached to his Motion – and I have now reviewed – the complete transcripts of the three depositions taken thus far in this case, along with DVDs of each of those depositions.  This was a particularly disheartening exercise.

Prior to being appointed to this Court, I litigated civil matters for 16 years. Consequently, I had the opportunity to participate in depositions in Louisiana and many other states and appeared with and against hundreds of attorneys from many locales.  In the thousands of hours of deposition testimony I personally attended or obtained, I never

---

[4]  Richardson testified that he first informed Reich the morning of the deposition.  (Tr. at 103).

witnessed or experienced conduct by a lawyer in a deposition that can be compared to that of Mr. Reich in the three depositions I have reviewed in this case.[5]  Accordingly, I am able to call upon some experience in this arena, sufficient at least to belie the suggestions offered by Reich at the hearing on this motion that conduct such as he displayed in this case is common among federal litigators "in the heat of battle."  (Tr. at pp. 25, 27)  While it may be common behavior for Reich, it is not, nor should it be, common or acceptable among members of the federal bar.

While the most recent of the depositions taken in this case (Richardson) is the primary focus of the motion before me, I discuss each in turn.

1.  <u>The Raymond Howard Deposition</u>

This was the first deposition taken in the case and set the stage for the myriad problems to follow.  Reich was the lead questioner and those questions, answers and related colloquy comprise over 300 pages in the transcript.  I reviewed that transcript thoroughly and find that Reich's conduct therein was unprofessional in a number of respects.

In too many instances to cite here, Reich interrupts the witness's testimony, a tactic for which he has been sanctioned before.  *See, e.g.*, *Landers*, 2009 WL 2046587 at *4.  He asked innumerable repetitive questions, arguing with the witness on 34 occasions that his question was a "simple question," and demanding on 55 occasions that the witness answer

---

[5]  It cannot escape my notice, or fail to inform my decision in this matter, that on the same day I entertained oral argument on the present motion, I also entertained argument on a discovery motion in a wholly separate matter that revolved entirely around Reich's unprofessional conduct in a deposition in **that** case.  *See Tajonera, et al. v. Black Elk Energy Offshore Operations, LLC, et al.*, No. 13-CV-0366 "G"(5), rec. doc. 616.  Having reviewed both the transcript and DVD of that deposition, it is abundantly clear to me that Reich has not been deterred in his conduct by the Rules of Civil Procedure or Professionalism or by any prior order of Judges of this District sanctioning him for the same misconduct.  As a result of his conduct in that matter, Reich was sanctioned.  (*Id.* rec. doc. 638).

with a "yes or no."  At one point, Reich went so far as to instruct Mr. Howard, when the latter attempted to explain an answer beyond the "yes or no" demanded by Reich, that "there is no explanation required."  (Tr. at 428).  Obviously, that is not a matter for a questioning lawyer to decide and it is improper to attempt to instruct or demand that a witness answer a question in a certain manner simply because the questioning lawyer is looking for that type of answer.

There is a seven-page passage in the middle of the transcript in which Reich asks Mr. Howard one question six times and another question four times, all of which predictably resulted in numerous objections and colloquy that could and should have been entirely avoided but for the overtly argumentative tactics of Reich.[6]  (Tr. at 169-75).

Moving on, Reich proceeded to refer to the deponent – twice – as "stupid" and when Howard's counsel objected that "calling somebody stupid is really, really insulting," Reich "rephrased" his question to refer to the deponent as "inept."  (Tr. at 185-86).  This conduct is not only violative of the Federal Rules but also runs afoul of the Code of Professionalism of the Louisiana State Bar Association which requires, in part, that counsel conduct themselves with "dignity, civility, courtesy and a sense of fair play."[7]

Shortly after the foregoing exchange, Reich moved on to questioning the witness's competency as a crane operator:

> Q.  Simple question, sir.  You purport to be a qualified crane operator who at least is claiming in this lawsuit that you could work as a crane operator in the future.  **Now, obviously, if you are not competent and you can't answer simple questions like this, maybe you can't.**  So it's a simple question.  **You say you are a competent crane operator, so this is the test.**  As a crane operator, do you know that that basket is going to go straight down –

---

[6]  Reich's argumentative tone is all the more apparent upon review of the DVD of the deposition.
[7]  The Code was adopted by the Judges of the Eastern District of Louisiana on August 4, 1999.

A.    I told you that.  If a load is dropped, it's going to be centered.

Q.    And as a crane operator, do you know that if you keep your boom steady, the only way that basket can possibly swing is if the boat moves?

A.    I told you that also.

> MR. PEULER: Objection, mischaracterization.

MR. REICH:   Okay.   And as a crane operator, do you know that there are sometimes when you can center a load properly and you can start your hoist; and then as you are starting the hoist, the crane -- excuse me, the boat operator can move?

> MR. PEULER: Same objection.

THE WITNESS:  I didn't understand that one.

MR. REICH:    Look, **if you don't understand, maybe you shouldn't be working as a crane operator**.  Simple question, sir.

> (Tr. at 195-96)(emphasis supplied).

This wholly improper line of questioning combines repetition, argument, incivility and inappropriate testimony of the questioning lawyer concerning the competency of the witness to do his job, all in violation of the Rules of Civil Procedure and Professionalism.[8]

Finally, while other counsel only briefly examined Mr. Howard in this deposition, Reich was nonetheless active on the record during these passages.  In fact, in response to

---

[8] It should be noted here that the Judges of the Eastern District have also adopted the Louisiana Rules of Professional Conduct, Rule 3.4 of which provides, in part, that:

> A lawyer shall not:
>
> * * * * * *
>
> (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, **or state a personal opinion as to the justness of a cause, the credibility of a witness**, the culpability of a civil litigant or the guilt or innocence of an accused. . . .

the very first question posed by another lawyer, Reich lodged the following improper objection:

> MR. REICH:  Let me object to the form of the question **because it doesn't define who the passenger is.  If the passenger is a licensed captain and merchant mariner.**
>
> (Tr. at 382)(emphasis supplied).

While Reich denied at the hearing making any improper speaking objections and "disagreed" with the Court over what words might be allowable after objecting to form, I simply cannot credit a suggestion from a lawyer of Reich's experience that the foregoing is a proper objection in any federal court anywhere in this country.  His is a particularly unconvincing argument considering the number of times he has previously been sanctioned for the same conduct in this District.

All of the foregoing conduct is improper and sanctionable, something that Reich should have known while engaging in it.  That conduct continued – and even worsened – in the Calvin Howard deposition.

### 2.  The Calvin Howard Deposition

Owing no doubt to the conduct of the Raymond Howard deposition, the Calvin Howard deposition started poorly, with Reich and Zehl exchanging threats to seek sanctions and/or terminate the deposition before it even started.  Once it did start, Reich's conduct from the first deposition continued, contributing substantially to the unprofessional, if not toxic, atmosphere in the room.

Early in the deposition, Reich took great issue with Zehl's generic (and proper) statement, "Objection, form":

> REICH:  Okay. Besides interfering with my questioning, what the heck is wrong with the form of that question since there is

nothing, you and I both know, wrong with the form of the
question.

(Tr. at 45).

This hostile reaction to a garden variety form objection was improper and uncalled-
for, particularly from a lawyer who has been repeatedly disciplined for making lengthy
speaking objections.

Things soon took a turn for the worse, with Reich unabashedly accusing counsel of
instructing his client "not to have any memory" of key facts (*id.* at 118); testifying through a
question that Howard's treating physician "never met a patient he didn't recommend
surgery on," (*id.* at 201); and accusing Mr. Howard of filing a "bogus" lawsuit "exaggerating"
[his] claims." (*Id.* at 243). I find all of these questions or statements to be grossly
unprofessional (particularly in light of Rule 3.4) and note here that, when given the
opportunity to recant any of them at the hearing, Reich declined.

The stage having been set in the two Howard depositions, the parties met again on
December 15, 2014 for the deposition of Sylvester Richardson.

3.  <u>The Richardson Deposition</u>

As noted, Plaintiff chiefly complains in his motion about Reich's conduct before and
during the Richardson deposition. Richardson was the crane operator at the time of the
Howards' accident. In addition to the aforementioned complaint regarding late notice of
Richardson's termination, Plaintiff's counsel also argues that, once the deposition
commenced, Reich presented Richardson as a "represented party" (represented by Reich,
as OLB's counsel) and proceeded to disrupt and delay the deposition with improper
speaking objections, despite all counsel having stipulated to form objections. (Rec. doc.
178-1 at 3 (citing Richardson Deposition, at 5)).

13

I have thoroughly reviewed the Richardson deposition and agree that Reich's conduct in that deposition was unprofessional.  I also find that the conduct of Howard's counsel, Ryan Zehl, was unprofessional and will discuss that conduct separately below.

The Sylvester deposition did not start well.  After counsel argued over the last-minute news that Richardson was no longer employed by Reich's client, questioning began. Reich's first three objections (in the first four pages of the transcript) were improper speaking objections, beginning with this:

Q. [by Zehl]:  You agree that Raymond Howard is in no way responsible for the incident on May 16 –

MR. REICH:

**Object to the form of the question.  He doesn't know where or what they were doing, where they were looking or weren't looking. He doesn't -- I mean he doesn't** –

MR. ZEHL:

Object to the form, right? Isn't that what we're doing?

MR. REICH:

I object to the form of the question.

MR. ZEHL:

Okay.

MR. DWYER:

Could we reserve all objections except as to the form of responsiveness?

MR. REICH:

Yeah, I assume so it's done pursuant to the federal rules?

> (Richardson depo., at 11-
> 12)(emphasis supplied).

As noted, Reich's first three objections were improper.  Here was his fifth:

BY MR. ZEHL:

Q. Mr. Richardson, I'm going to hand you what I marked as Exhibit #1, it's an incident report from K & K Offshore.

(The document is marked as Exhibit #1 and 3 is attached to the deposition hereto.)

MR. REICH:

If it's K & K Offshore, which is something that is not his –

MR. ZEHL:

Objection to form?  If you have an objection –

MR. REICH:

**I'm objecting because it's a document that is outside of his knowledge since he didn't prepare it and he's never seen it before today's date.**

MR. ZEHL:

Okay.

> (*Id.* at 13-14)
> (emphasis supplied).

These were improper speaking objections that suggested answers to the deponent (who

until very recently had been employed by Reich's client and whom Reich was defending in

the deposition) and, in the case of the latter "objection," arguably included testimony of a lawyer about facts before a question was even posed.

I provided Reich the opportunity to explain these objections at the hearing.  Rather than acknowledge their impropriety, Reich chose to argue that they were proper "form" objections and suggested that, had I sat through the deposition, I would know that Richardson was immune to suggestive objections by Reich.  That is not at all the point here.  An objection that suggests an answer is improper, whether the witness follows the lawyer's lead or not.  This is axiomatic.  Reich's suggestion that because Richardson was not a pliable witness his objections were not improper ignores well-established rules prohibiting speaking objections, a practice for which Reich has been sanctioned in the past.

This obstructionist conduct continued throughout the deposition.   In all, Reich lodged dozens of lengthy, sometimes rambling, and uniformly inappropriate speaking objections, all in a 2.5 hour deposition.   At one point, Reich directed the following condescending remark at Zehl as part of one of his objections:

> REICH:  Object to the form of the question, that is way too speculative and broad.  **And counselor, maybe you've never taken a deposition before but this is speculation.  He's not an expert.  Understand he's not an expert.  You're wasting your time and everybody's time asking him these.**

> (*Id.* at 34) (emphasis supplied).

This comment precipitated a lengthy and unfortunate exchange of unpleasantries between Reich and Zehl, who apparently had had enough of Reich's tactics, immediately telling Reich – twice – to "shut your mouth."  (*Id.)*.   What followed was a back-and-forth with each lawyer accusing the other of unprofessional conduct.  (*Id.* at 34-36).  Reich accused Zehl of unprofessional conduct for telling him to shut his mouth.  And Zehl

observed that Reich had persisted in all three depositions in, among other things, injecting his own personal beliefs, attacking counsel and the parties and acting in an unprofessional manner.

Unfortunately, they were both correct.

D.  *Sanctions against Robert Reich*

Litigation is not a game, but rather is a search for the truth and an effort to obtain justice.  *See Sims v. ANR*, 77 F.3d 846, 849 (5th Cir. 1996); *Hall v. Freese* 735 F.2d 956, 961-62 (5th Cir. 1984); *Bintliff v. U.S.*, 462 F.2d 403, 407 (5th Cir. 1972).

Reich has litigated in this court for decades.   In that time, numerous of his opponents have filed against him (or his clients, based upon his conduct on their behalf) numerous motions for sanctions, too many of which have been granted.  Curiously, in his opposition to this motion, he even cites to a case in which he was personally sanctioned for unprofessional deposition conduct as support for his argument that this Court should not sanction him for substantially identical conduct in this matter.   (Rec. doc. 184 (citing *Bordelon*)).  That citation and discussion proves that he is aware of the pertinent rules concerning lawyer conduct in depositions.  That he serially ignores those rules, in the face of previous decisions sanctioning him for running afoul of them, demonstrates to this Court that his conduct is willful and knowing and that the sanctions levied against him previously, far from having the desired deterrent effect, have had no effect whatsoever.

No lawyer of Reich's experience could fail to recognize that his deposition conduct in this case would not be tolerated in any courtroom in this District, much less anywhere else.  *Bordelon,* 2011 WL 164636 at * 5.  Yet he persists in these depositions on committing

"willful and repetitive"[9] violations of the Rules of Civil Procedure and Professional Conduct, even when opposing counsel practically pleads with him to cease his abusive tactics.

I find that the conduct displayed by Reich in the depositions taken thus far in this case, which I reviewed in both written and videotaped formats, represents a gross deviation from the standards of professionalism demanded of the lawyers of this Court. That conduct demands sanctions.  That Reich is a recidivist in this regard requires a sanction more severe than any of those previously issued against him.  While I am mindful of my responsibility to tailor that sanction to his particular conduct, the sanctions I impose against him here are intended to and must serve the "primary purpose of sanctions," which is to "deter frivolous litigation and abusive tactics … [by] both the culpable attorney and members of the bar in general."  *Topalian II*, 84 F.3d 433, 1996 WL 248995 at *4.

The particular challenge for the Court here is how to fashion a sanction that will achieve this purpose, in light of this experienced attorney's ongoing willful violation of the Federal Rules and all notions of professional decorum, along with the fact that he seems to relish flouting these rules and conventions.  I have thoroughly considered an appropriate sanction in this case, with the aim of arriving at the least severe sanction adequate to achieve the purpose of deterring abusive tactics such as those employed by Reich in the subject depositions.  I considered many possible options, but have arrived at the conclusion that the following sanctions are the least severe sanction available to address – and arrest – what I perceive to be wholly inappropriate conduct by Reich going forward.

First, it is hereby ordered that Reich is sanctioned $1,500.00, payable immediately to counsel for Calvin Howard, for impeding and extending the deposition of Sylvester

---

[9] *See Topalian v. Ehrman*, 84 F.3d 433, 1996 WL 248995 at *5 (5ᵗʰ Cir. 1996)("Topalian II").

Richardson.[10]  Reich may not bill his client, OLB, for the sanctions but shall pay it out of his own coffers.

It is further ordered that Mr. Reich will not be permitted to participate in any future depositions to be taken in this case.  I am fully aware that able counsel from Reich's firm are available for that purpose going forward – indeed other counsel have appeared routinely in this matter for hearings on motions signed by Reich and which concern, at least in part, his conduct in this case.  (Rec. docs. 89, 183).  This sanction is imposed, not only on the basis of Reich's conduct in the Richardson deposition, but also on the basis of his conduct in both Plaintiffs' depositions, as viewed against the backdrop of his history in this District regarding his past conduct and sanctions that have been issued against him and that he continues to ignore.

History has proven, unfortunately, that "traditional" monetary sanctions (which should never be traditional to any practicing attorney) have had no deterrent effect on Reich's abusive tactics and unprofessional conduct in depositions.  Rather than grope for or guess at an amount of money (beyond the $1,500 assessed above) that **might** have such an effect, this Court chooses to impose a sanction that will guarantee – in this case at least – that the proceedings and the litigants therein will no longer suffer the effects of those tactics.  Reich is further ordered to provide a copy of this Order and Reasons to his client and to file into the record no later than March 11, 2015 an affidavit confirming that he has complied with this directive and identifying by name the client representative to whom he provided the Order.

---

[10]  Plaintiff's counsel represented to the Court that this was the approximate cost incurred by them to travel to the Richardson deposition.  (Rec. doc. 178-1 at 9).

This Order comes with an additional admonishment. Should similar deposition conduct or tactics by Reich come to the attention of this Court at any time in the future, in this case or any other, the sanction ordered (or, more likely, recommended) by me will be severe – in all likelihood more severe than this Court is empowered to employ. Finally, a copy of this Order and Reasons will be circulated by this Court to the Chief District Judge and to all Magistrate Judges of the Eastern District.

   E.  *Sanctions against Ryan Zehl*

Mr. Zehl admits in his motion papers to having made "some regrettable statements" in response to Reich's conduct and statements before and during the Richardson deposition. This is an understatement to be sure. However, in stark contrast to Reich, at the hearing on this motion Zehl went to substantial lengths to acknowledge and apologize for his unprofessional conduct. I find that Zehl's recognition of his transgressions and contrition therefor is meaningful and mitigates against the imposition of a harsh sanction.

Zehl's questionable conduct here takes a different form than that of Reich. His transgressions are found primarily in numerous petty and unprofessional personal comments and insults directed at Reich, not only during the deposition but in unrelated correspondence as well. While it is apparent that Reich's own conduct was a precipitant at times of these comments,[11] that does not excuse Zehl for having resorted to them.

Rather than defuse the atmosphere of conflict, Zehl's comments exacerbated it. There are numerous instances in the Richardson deposition in which Zehl calls Reich insulting names (repeatedly referring to him as "Mr. Genius," for example) after twice

---

[11]  This is not the first time a court reviewing such a motion has found Reich to be "the instigator of [] discovery disputes" that draw opposing counsel into unprofessional exchanges with him. *See Bordelon*, 2011 WL 164636 at *6.

telling Reich to "shut your mouth."  (Richardson depo. at 34, 81).  This conduct cannot be tolerated by the Court.

Making matters worse, in a chain of emails following the three subject depositions that appear to me to have been intended (at least in the beginning) to arrange additional depositions, Zehl ultimately returns to name calling, accusing Reich of various nefarious inclinations (clearly out of frustration with similar accusations directed at him by Reich) and even issuing a vague threat to "make this case even more difficult for your client." (Rec. doc. 184-1).[12]  Again, this conduct is unbecoming and cannot be allowed.

From my review of the subject depositions, the remaining attorneys in this matter who have attended these depositions have demonstrated admirable professional restraint – it is indeed a shame that, against the backdrop of the behavior of Reich and Zehl, the Court almost feels compelled to congratulate them for exercising that restraint – and their restraint is evidence enough that, regardless of the cause, Zehl's unprofessional personal insults directed at Reich (both at depositions and in emails attached as exhibits to OLB's opposition), exceeded the bounds of acceptable advocacy.

While I do not find that these regrettable comments actually prolonged the depositions such that an assessment of costs or fees would be appropriate, I do find that an alternative sanction is nonetheless appropriate and necessary.  Accordingly, I impose the following sanction against Mr. Zehl:  He is to attend an additional five (5) hours of

---

[12]  I should point out that, in his Opposition Memorandum, Reich "strongly urge[d] the Court to **thoroughly** read the attached and egregiously unprofessional email" referenced above.  (Rec. doc. 184 at 5).  This urgent task was made impossible by Reich himself, however, because he neglected to attach the entire email exchange, making a "thorough" review of it impossible.  Upon realizing that Reich had supplied only part of the exchange, I ordered the remainder produced.  Not surprisingly, it revealed that Reich's conduct, in large part, precipitated Zehl's outburst.  In a pleading in which he castigates opposing counsel for unethical conduct due to his alleged "lack of candor toward the tribunal," I find Reich's intentional omission of the **entirety** of this supposedly key document to be, in Reich's own words, "egregiously unprofessional."

continuing legal education over and above what he is required to attend in Texas, all of which must be in the area of professionalism and/or ethics and offered either by the Federal Bar Association or the Louisiana Bar Association.  Zehl is further cautioned that should similar conduct by him come to the attention of this Court at any time in the future, in this case or any other, he will be subject to a more severe sanction than imposed herein, up to and including a recommendation that his admission in this case *pro hac vice* be revoked.

### III.    CONCLUSION

Lawyers caught up in disputes such as this often seek shelter in the tired and overused "zealous advocate" defense.  At the hearing on the motion, Reich did so repeatedly.  But zealousness is not a safe harbor for conduct such as his:

> [w]hatever the reason, obstructionist discovery conduct is born of a **warped view of zealous advocacy**, often formed by insecurities and fear of the truth.  This conduct fuels the astronomically costly litigation industry at the expense of "the just, speedy, and inexpensive determination of every action and proceeding."  Fed.R.Civ.P. 1.  It persists because most litigators and a few real trial lawyers—even very good ones, like the lawyers in this case—have come to accept it as part of the routine chicanery of federal discovery practice.

> *Security Nat'l*, 299 F.R.D.
> at 597 (emphasis added).

What becomes immediately apparent to anyone who reads the transcripts of the depositions in this case is that Reich's particular brand of zealous advocacy invariably tends to bring out the worst in otherwise professional lawyers who are forced to endure his misconduct.  Far from "simulat[ing] the dignified and serious atmosphere of the

courtroom,"[13] Reich's antics demean the lawyers, witnesses and the discovery process in general.

For the foregoing reasons, it is ordered that the motion for costs and sanctions is GRANTED.  Robert Reich is hereby sanctioned $1,500 for the conduct described above, payable immediately to counsel for Calvin Howard.  Reich may not bill his client, OLB, for these sanctions.  Further, Reich is prohibited from participating in any future depositions in this case.

Additionally, the Court *sua sponte* sanctions Ryan Zehl for the reasons set forth herein.  Zehl is to attend in 2015 an additional five (5) hours of continuing legal education over and above what he is required to attend in Texas, all of which must be in the area of professionalism and/or ethics and offered either by the Federal Bar Association or the Louisiana Bar Association.  No later than February 1, 2016, he is to provide the Court with documentation that he has complied with this order.

New Orleans, Louisiana, this __4th__ day of _____ March _____ 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[13] *Bordelon*, 2011 WL 164636 at *5.