## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CALVIN HOWARD | * | **CIVIL ACTION NO:** |
| | * | 13-04811, c/w 13-06407, c/w 14-01188 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| OFFSHORE LIFTBOATS, LLC, K&K | * | ***APPLIES TO ALL CASES*** |
| OFFSHORE, LLC, P&M MARINE, LLC, | * | **JUDGE:** |
| GULF COAST MARINE, LLC, | * | |
| PINNACLE ENG'R, INC., BAY SOUTH, | * | JUDGE SUSIE MORGAN |
| INC., TAMMANY OIL & GAS, LLC, | * | |
| ABC INSURANCE CO., and CERTAIN | * | **MAGISTRATE:** |
| UNDERWRITERS AT LLOYD'S OF | * | |
| LONDON, SYNDICATE 3000 | * | MAGISTRATE MICHAEL NORTH |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendants, K&K Offshore, LLC, P&M Marine, LLC, Atlantic Specialty Insurance Company, Markel American Insurance Company, ProCentury Insurance Company, Navigators Insurance Company, United States Fire Insurance Company, Lloyds Underwriters, and Torus Insurance Company (UK), Limited (hereinafter sometimes collectively referred to as "K&K Defendants" and/or "K&K"), respectfully submit the following Memorandum in support of the Motion for Summary Judgment:

## FACTS

OLB owned and operated the L/B JANIE on or about May 16, 2013. (Rec. Doc. 230). K&K operated the M/V CONTENDER on or about May 16, 2013.  (Rec. Doc. 1).  Calvin Howard and Raymond Howard were OLB employees who were being transported to the L/B JANIE via the M/V CONTENDER.  (Rec. Doc. 1) and (Rec. Doc. 87 and 9.) .

This incident occurred during the personnel transfer of Calvin Howard and Raymond Howard from the M/V CONTENDER to the L/B JANIE. (Rec. Doc. 87 and 93).

OLB employees aboard the L/B JANIE were Captain Tim Lawrence, Mate Rick Simoneaux, and Jose Fernandez - they all testified they had turned their back from the time the passengers loaded their baggage onto the basket until after the basket was caught on the handrail. (See Exhibit "E", Deposition of Timothy Lawrence, p. 121, 11-20, Exhibit "H", Deposition of Rick Simoneaux, p. 38,19 – 39,1, and Exhibit "B", Deposition of Jose Fernandez, pgs. 56, 17 - 57, 9).

Sylvester Richardson's position with OLB was deckhand at the time of this incident. (See Exhibit "Q", OLB smooth log for May 16, 2013, produced by OLB in discovery).   At the time of the incident, Daniel Blake Ryland was employed by K&K – his position was the deckhand aboard the M/V CONTENDER and he was tasked with providing signals to the crane operator. (See Exhibit "G", Deposition of Daniel Blake Ryland, p. 181, 8-15).

This incident occurred because Sylvester Richardson lifted the personnel basket when the tip of the boom was not centered over the personnel basket. (See, Exhibit "N", Deposition of Robert Watson, pg. 139, 3–9; pg. 169, 15 - 172, 9; pg. 190, 5–19; pg. 221, l–23; pg. 231, 16-24; Exhibit "J", Deposition of David Cole, pgs. 31, 17 – 32, 11; Exhibit "M", Deposition of Captain Mitchell Stoller, pgs. 50, 23 – 53, 1; Exhibit "E", Deposition of Timothy Lawrence; Exhibit "L", Deposition of Jack Madeley, pgs. 62 – 6-21; Exhibit "D", Deposition of Captain Daley, pgs. 37, 6 – 38, 2; and Exhibit "F", Deposition of Sylvester Richardson, pgs. 28, 9 - 29, 16). Due to this premature lift, the basket immediately swung towards the starboard / stern of the M/V CONTENDER. *Id, (See also*, Exhibit "O", Deposition of Calvin Howard, pgs. 143 – 5, p. 144 – 1; Exhibit "P", Deposition of Raymond Howard, pg. 181, 2 – 11; pgs. 360 – 2, 361 – 3). The lift

caused the basket to get stuck on the stern handrail on the starboard side of the M/V CONTENDER. *Id.*

Sylvester Richardson continued the lift until he heard screaming from the OLB employees. (See Exhibit "F", Deposition of Sylvester Richardson, pgs. 132, 14 – 133, 23). After Sylvester Richardson was alerted by the shouts, the passengers fell from the basket. (See Exhibit "F", Deposition of Sylvester Richardson, pgs. 132, 14 – 133, 23).

## LAW AND ARGUMENT

The crane operator has the final word on when it is safe to lift. Even with a signal, he must determine that it is safe to lift. (See, Rec. Doc. 329-1, Plaintiffs Raymond Howard's and Calvin Howard's Statement of Undisputed Materials Facts in Support of Their Motions for Partial Summary Judgment against Offshore Liftboats LLC and K&K Offshore on Liability and Contributory Negligence and the Limitation of Liability Defenses, Nos. 71 and 79.) (See Exhibit "N", Deposition of Robert Watson, pgs. 169, 23 – 172, 20; Exhibit "E", Deposition of Timothy Lawrence, pgs. 124-25; 125-25; 132, 8 – 133, 1; Exhibit "D", Deposition of Captain Gregory Daley, p. 53, 6-19; Exhibit "J", Deposition of David Cole, pgs. 31, 17 – 32, 11).

Once the crane operator is given a signal to hoist, he still must assess the conditions and only lift once he knows it is safe to lift. (See Exhibit "J", Deposition of David Cole, pgs. 31, 17 – 32, 11, See, Exhibit "N", Deposition of Robert Watson, pg. 139, 3–9; pg. 169, 15 - 172, 9; pg. 190, 5–19; pg. 221, l–23; pg. 231, 16-24; Exhibit "M", Deposition of Captain Mitchell Stoller, pgs. 50, 23 – 53, 1; Exhibit "E", Deposition of Timothy Lawrence; Exhibit "L", Deposition of Jack Madeley, pgs. 62 – 6-21; Exhibit "D", Deposition of Captain Daley, pgs. 37, 6 – 38, 2; and Exhibit "F", Deposition of Sylvester Richardson, pgs. 28, 9 - 129, 16).

A. **THE UNDISPUTED FACTS SHOW THAT K&K IS NOT RESPONSIBLE FOR THE HOWARDS' ALLEGED INJURIES PURSUANT TO THE GENERAL MARITIME LAW NEGLIGENCE**

To state a claim for relief under the General Maritime Law, the "plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).  Under this scheme, a defendant's conduct is only actionable if it is the "legal cause" of the plaintiff's injuries; **"legal cause" is something greater than "but for" causation – "the negligence must be a substantial factor in causing the injuries."** *Richardson v. SEACOR Liftboats, LLC*, No. 14-1712, 2015 WL 4397134, *8 (E.D.La. July 16, 2015) **emphasis added**; citing *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). Causation has two sub-elements: "(a) cause in fact and (b) proximate or legal cause." *In re Mid South Towing Co.*, 418 F.3d 526, 532 5th Cir. 2005).

1. **CAUSE-IN-FACT MUST BE A SUBSTANTIAL FACTOR**

While K&K asserts that the plaintiffs make erroneous allegations against K&K, even if plaintiffs were able to prove these allegations to be true at trial, the plaintiffs would still not succeed in proving that K&K was negligent because none of K&K's actions or omissions was a "substantial factor" in causing plaintiffs' injuries.  Where there are multiple "concurrent" causes of an accident, the proper inquiry is whether the conduct in question is a "substantial factor." *In re Katrina Canal Breaches Consol. Litigation*, 2011 WL 1792542 (E.D.La. 2011). A defendant's

conduct "cannot be a 'substantial factor' in causing the plaintiff's harm when the action is only an insignificant cause." *Id.* citing *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978). "**If the plaintiff's harm would have occurred in the absence of the defendant's act or omission, the act is not a substantial factor**." *In re Katrina*, 2011 AMC 1674 (Ed. La. 2011), citing to *Schoenbaum – Admiralty and Maritime Law,* § 5-3 (4th ed. 2004); *Maritime Law Desk Book*, p. 32 of the 2013 suppl. to 2010 ed., citing *Schoenbaum - Admiralty and Maritime Law*, § 5-3 (4th ed. 2004). **Emphasis added**. A defendant's act certainly cannot be a "substantial factor" if the plaintiff's harm would have occurred without it. *Schoenbaum – Admiralty and Maritime Law,* §5-3. p. 190 (4th ed. 2004).

Plaintiffs obviously have alleged voluminous theories for the cause of this incident, most of which are directed at OLB. "Where there are 'opposing, but equally reasonable, theories regarding the cause' of a maritime incident, 'one which sponsors a determination that the defendant is at fault and one which sponsors a determination that the accident was caused without defendant's fault, 'the Court will not rely on 'speculation,' but will find for the defendant.'" *Offshore Specialty Fabricators, LLC v. Dumas International, Inc.*, 982 F.Supp.2d 695, 704 (E.D.La. 2013); quoting *Marquette Transp. Co., Inc. v. La. Machinery Co., Inc.,* 367 F.3d 398, 404 (5th Cir. 2004).

The undisputed facts show that K&K's alleged actions and/or omissions were not a "substantial factor" in the alleged injuries sustained by the Howards. While the Howards recite a myriad of allegations against K&K, none of these amount to a "substantial factor" for the alleged incident.

### a. K&K's conduct was not a "substantial factor" of the plaintiffs' alleged injuries

The plaintiffs' make a myriad of allegations against both K&K and OLB asserting claims for negligence. The claims against K&K include: failure to train; failure to conduct a JSA; negligent hiring; failure to properly communicate with the OLB crane operator; failure of Ryland to give proper signals; failure of Captain Godwin to maintain station; and failure to follow the K&K policy and procedures manual.  While K&K vehemently asserts that plaintiffs cannot prove any of these allegations, even if plaintiff proves that each is true, none of these alleged negligent acts is a "substantial factor" of the plaintiffs' alleged injuries. Specifically, the Howards alleged injuries would have still occurred even in the absence of K&K's acts or omissions.

Plaintiffs allege that K&K should have never hired Ryland because of his previous employment history in which he was fired for failing a drug test.  However, it is undisputed that Ryland passed a pre-employment drug test before K&K hired him. (See Exhibit "G", Deposition of Daniel Blake Ryland, pg. 30, 9-18).

Accordingly, it was not negligent of K&K to hire Ryland and more importantly, any alleged negligent hiring could not have prevented this incident.

Plaintiffs also allege that K&K failed to perform a written JSA in compliance with its policies and procedures.  However, there is no evidence that a written JSA was required.  It is undisputed that Ryland and Captain Godwin performed a verbal JSA prior to the transfer.  (See Exhibit "C", Deposition of Captain Godwin, at pgs. 38, 4 - 39, 1; Exhibit "G", Deposition of Daniel Blake Ryland, pg. 49, 3-14; pgs. 162, 25 – 163, 12, pgs. 163, 12 – pg. 164, 3).

K&K also is alleged to be negligent because Captain Godwin could not maintain the vessel position. However, what is undisputed is that there is almost always movement of the

vessel. (See Exhibit "B", Deposition of Jose Fernandez, pgs. 47, 15 - 48 3; Exhibit "E",

Deposition of Timothy Lawrence, pg. 51, 1-20, pg. 11, 20-22;  Deposition "F", Deposition of

Sylvester Richardson, pg. 145, 7-15; and Exhibit "I", Deposition of Tim Arrington, p. 80, 4-7, p.

167, 19-22).   All experts would expect the vessel to move in the conditions that were present at

the time of the subject transfer. (Exhibit "D", Deposition of Captain Gregory Daley, pgs. 49, 6 –

50, 3; pg. 111, 2-10).  However, neither the conditions nor the movement of the vessel made the

lift unreasonably dangerous to the point that an all-stop was warranted.

Plaintiffs also make allegations that K&K failed to train Ryland properly. However, it is

undisputed that Ryland had all necessary credentials and required training to be a deckhand

during a personnel basket transfer. (See Exhibit "G", Deposition of Daniel Blake Ryland, pg. 21,

2 – 17; pgs. 33, 23 - 34, 30).

Plaintiffs also allege that K&K deckhand, Daniel Blake Ryland, was required to have a

radio at the time of the incident.  However, the fact that Ryland did not have a radio was not a

substantial factor in causing this incident.  OLB's crane expert, Robert Watson, testified that the

use of a radio by the deckhand would not have changed the situation.  Specifically, he testified as

follows:

```
                         77
     3       If I understand your testimony you are
     4       saying that the use of a radio between the crane
     5       operator and Mr. Ryland what not have made the
     6       job safer?
     7       A.      That's correct.  In this incident.
     8       Q.      And if other maritime experts,
     9       captains, were to say that a radio wouldn't make
    10       it more dangerous and would, in fact, have helped
    11       ensure safety, you would just disagree with them;
    12       correct?
    13       A.      In this incident, I don't think it
    14       would have changed the situation, beings the
    15       operator had direct communication, visually, with
```

16      the signal person and himself, assuming the boat
17      was statically in a position to where he couldn't
18      move, those two guys done their job correctly.

See Exhibit "N", Deposition Robert Watson, pg. 77, 3-20; also se Exhibit "D", Deposition of Captain Daley, pg. 104, 25 – 105, 11.

Regardless of whether K&K's policy required the deckhand to have a radio during the personnel transfer, such failure of the signalman to properly possess a radio could not have prevented this incident.

There is also a dispute as to whether or not Ryland gave the crane operator any signals at all. However, and as is argued in more depth below, even assuming that Ryland did give Richardson a signal, all parties agree and it is an undisputed fact, that the crane operator has the ultimate authority to decide when to lift and when the lift can be made safely. (See, Exhibit "N", Deposition of Robert Watson, pg. 139, 3–9; pg. 169, 15 - 172, 9; pg. 190, 5–19; pg. 221, l–23; pg. 231, 16-24; Exhibit "J", Deposition of David Cole, pgs. 31, 17 – 32, 11; Exhibit "M", Deposition of Captain Mitchell Stoller, pgs. 50, 23 – 53, 1; Exhibit "E", Deposition of Timothy Lawrence; and Exhibit "F", Deposition of Sylvester Richardson, pgs. 28, 9 - 129, 16). Accordingly, even after receiving a signal from Ryland, which K&K asserts Ryland did not give a signal, Richardson would have the obligation and duty to look down and make sure the boom tip and the basket were plumb. *Id.* It is undisputed that Richardson had this obligation. *Id.* Accordingly, regardless of whether the vessel was maintaining station, a written JSA was performed, a radio was being used, the vessel was moving, a different deckhand was on the vessel, or any other acts that plaintiffs deem constitute negligence on the part of K&K, it is undisputed that Richardson's failure to comply with his obligation to ensure that the basket and boom tip are plumb prior to lifting was the real cause of this incident. None of the alleged

negligent acts of K&K are "substantial factors" in this incident because the plaintiffs' alleged harm still would have occurred in the absence of K&K's alleged negligent acts or omissions." *In re Katrina*, 2011 WL 1792542; citing *Admiralty and Maritime Law*, § 5-3 (4th ed. 2004).

**b.   Plaintiffs are not entitled to assert negligence per se in connection with K&K's alleged failure to timely drug test the crew that was directly involved**

Plaintiffs allege that K&K was negligent *per se*, pursuant to 45 U.S.C. § 53, due to the alleged statutory violation of the M/V THE CONTENDER after the incident.  45 U.S.C. § 53 states in pertinent part that:

> [N]o such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees **contributed to the injury** or death of such employee.

45 U.S.C. § 53 (emphasis added).

Specifically, plaintiffs allege that K&K failed to timely drug/alcohol test the crew in accordance with 46 U.S.C. § 4.06 -1, *et seq.* However, pursuant to 45 U.S.C. § 53, the plaintiff must show that the violation of the statute "contributed to the injury … of such employee." It is an undisputed fact, and a matter of common sense, that K&K's alleged failure to drug test its employees, post-accident, could not have "contributed to the injury" of the Howards.  (See Exhibit "D", Deposition of Captain Daley, pgs. 116, 23 – 117, 12; pgs. 119, 17 – 120, 2).

Multiple courts, including the Fifth Circuit, have made this determination.  The Fifth Circuit held that any statutory violations for failure to timely drug test crew members are not "done, occasioned, or incurred" as a result of the actual incident. *In re: In the Matter of the Complaint of Transporter Marine, Inc.*, 217 F.3d 335, 339 (5th Cir. 2000). The Fifth Circuit viewed the "violations alleged to have occurred were distinct from, and subsequent to, the

incident in which [Plaintiff] was injured." *Id*. at 340. Clearly, a post-accident violation that gives rise to a "distinct occurrence" could not have contributed to any alleged injuries.

"The fact that the test is not mandated until after an incident occurs suggests that the regulation is not for [plaintiff's] benefit at all but instead is intended to protect the *next* injured party aboard a ship commanded by [that captain]. *Lopez v. Calumet River Fleeting, Inc.*, No. 11-C-6657, 2013 WL 2181288 (N.D.Ill. May 20, 2013); citing *Transp. Inst. V. U.S. Coast Guard*, 727 F.Supp. 648, 659 (D.D.C. 1989) (purpose of post-casualty testing is to obtain information and subsequently "take appropriate measures to safeguard the general public"); *see also Sinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 630 (1989) (same justification for testing railroad employees immediately following a railway incident). In *Lopez*, the court held that "because no reasonable fact finder could determine that [defendant's] failure to order [the vessel captain] to undergo drug and alcohol testing immediately following the incident played a causative role in [plaintiff's] injury, judgment as a matter of law in [plaintiff's] favor is inappropriate." *Lopez*, 2013 WL 2181288, *3.

There must be a "causal connection" between the injury alleged and the statutory violation in order to establish negligence per se. *Florida Marine Transporters, Inc. v. Sanford*, 255 Fed.Appx. 885, 888 (5th Cir. 2007).

Since there are no facts or law that could find even the most remote causal connection between the plaintiffs' alleged injuries and the alleged failure to timely issue a post-accident drug test, any alleged failure to timely issue drug-tests did not cause and could not have prevented plaintiffs' injuries.  Accordingly, any allegations regarding the failure to timely drug test the K&K crew should be dismissed, with prejudice.

## 2.      PROXIMATE/LEGAL CAUSE

Even assuming arguendo that plaintiffs convince this Court that one of K&K's actions or omissions were a "substantial factor" in plaintiffs' injuries, K&K is still entitled to summary judgment because Richardson's undisputed acts and omissions were a superseding cause that precludes a finding of negligence on K&K.

The "superseding cause" doctrine is similar and related to the principle of "proximate causation." *Tidewater Marine, Inc. v. Sanco Inern., Inc.*, 113 F.Supp.2d 987, 998 (E.D.La. 2000); citing *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996). This doctrine applies when a defendant's negligence "substantially" contributes to the injury in fact, "but the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Id.* (quoting *T. Schoenbaum*, *Admiralty and Maritime Law* § 5-3, at 165-66 (2nd ed. 1994)). Therefore, even if K&K's actions may have been a "substantial factor," K&K is not responsible when the injury was "brought about by a later cause of independent origin, for which [K&K] is not responsible." *Id;* quoting *Nunley v. M/V DAUNTLESS COLOCOTRONIS*, 727 f.2D 455, 464 (5th Cir. 1984).

> The Fifth Circuit has explained the doctrine of superseding causation as follows:
>
> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if:
>
> (a) the actor at the time of the negligent conduct should have realized that a third person might so act, or
>
> (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
>
> (c)  the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Donaghey*, 974 F.2d at 652 (citing *Nunley*, 727 F.2d at 464–65 (quoting Restatement (Second) of Torts § 447)).

Where the subsequent negligence of a third party could not have been foreseen by a reasonably prudent person, the initial wrongdoer is absolved of all liability for the injuries suffered by the plaintiff. *Tidewater*, 113 F.Supp.2d at 999.

As stated above, it is wholly undisputed that the crane operator bears the ultimate authority and responsibility for making a safe lift. (See, Exhibit "N", Deposition of Robert Watson, pg. 139, 3–9; pg. 169, 15 - 172, 9; pg. 190, 5–19; pg. 221, l–23; pg. 231, 16-24; Exhibit "J", Deposition of David Cole, pgs. 31, 17 – 32, 11; Exhibit "M", Deposition of Captain Mitchell Stoller, pgs. 50, 23 – 53, 1; Exhibit "E", Deposition of Timothy Lawrence; Exhibit "L", Deposition of Jack Madeley, pgs. 62 – 6-21; Exhibit "D", Deposition of Captain Daley, pgs. 37, 6 – 38, 2; and Exhibit "F", Deposition of Sylvester Richardson, pgs. 28, 9 - 129, 16).   In fact, all the experts agree that even after receiving a signal from the deckhand, which K&K contends Ryland never gave any signal, Richardson had the obligation and duty to look down and ensure that the crane boom and basket were plumb.  *Id.*   Plaintiffs' expert, Commander David Cole testifies as follows:

```
                    31
17     Q.  (By Mr. Peuler)  So it would be your testimony
18    that after a hand signal in this -- use -- a hand signal
19    to hoist is given from a deckhand to a crane operator,
20    that the crane operator isn't to immediately engage and
21    hoist, but that just means:  Mr. Crane Operator, we're
22    good down here on the deck, lined up.  Now it's -- the
23    ball's in your court, so to speak, to assess the
24    situation, to see conditions, and then make sure he
25    times the lift as a wave peaks or on its crest, as you

                    32
1    said earlier?
2      A.   Well, once the signal to hoist is given, of
3    course, you have to understand that the crane operator
```

4    by all -- whether it's ANSI standards or API standards,
5    has the ultimate control of the lift.  All right?
6          Once he gets the signal to hoist, if it's
7    not safe to hoist, he doesn't; he's not supposed to.
8    See, that's an important thing.  That's a call the
9    complainant -- excuse me.  That's a call that the crane
10   operator has to make, whether he can safely lift once
11   he's told that he can lift.

(See Exhibit "J", Deposition of David Cole, pg. 31, 17 – 32, 11.)

OLB's expert, Captain Daley, testified:

4          Q.  And once that signal's given, in the crane
5          operator supposed to immediately hoists?
6          A.  It's in the - - the crane operator has to
7          evaluate the situation.  And if he sees something to
8          override that signal, then he should not hoist.  But if
9          he feels that everything is safe and he sees that
10         signal, then yes, he should - - he should hoist.
11         He should not take the signal of the
12         signalmen as blind faith, everything is good.  He still
13         needs to have situational awareness and weigh the risks
14         of what's happening before he does any operations.

(See Exhibit "D", Deposition of Captain Daley, pg. 53, 4 – 14.)

Regardless of what facts remain in dispute, Richardson's failure to properly perform his duty caused the basket to swing and caused the alleged injuries to the plaintiffs. This is a quintessential "superseding cause."

Applying Richardson's actions to the test set forth above, if any of the three factors exist, then Richardson's negligence is not a "superseding cause." K&K submits that none of the factors apply for the following reasons:

1. As a matter of common sense and fact, Ryland should not have realized or thought that Richardson would lift the basket while the crane boom and basket were misaligned;

2. The experts hired by the parties unanimously agree that Richardson lifting the basket while the boom and basket were not aligned is highly extraordinary and the responsibility

13

of Richardson; (See, Exhibit "N", Deposition of Robert Watson, pg. 139, 3–9; pg. 169, 15 - 172, 9; pg. 190, 5–19; pg. 221, l–23; pg. 231, 16-24; Exhibit "J", Deposition of David Cole, pgs. 31, 17 – 32, 11; Exhibit "M", Deposition of Captain Mitchell Stoller, pgs. 50, 23 – 53, 1; Exhibit "E", Deposition of Timothy Lawrence; Exhibit "L", Deposition of Jack Madeley, pgs. 62 – 6-21; Exhibit "D", Deposition of Captain Daley, pgs. 37, 6 – 38, 2; and Exhibit "F", Deposition of Sylvester Richardson, pgs. 28, 9 - 129, 16);

3.  Richardson's intervening act, i.e. lifting before the boom tip and basket were aligned, is not a normal consequence of Ryland's act, even assuming Ryland gave the signal to lift, which K&K disputes, because Richardson was obligated to confirm the boom tip and basket were aligned after receiving a signal from Ryland. Since he failed, Richardson's actions were "extraordinarily negligent."

Accordingly, Richardson's actions do not fall within the ambit of any of the three exceptions to the "superseding cause" rule espoused by the Fifth Circuit. It is undisputed that Richardson's failure to conduct himself appropriately and perform his obligations with care caused the basket to be lifted off the deck when it was misaligned; and subsequently causing plaintiffs to fall from the basket.  This superseding cause relieves K&K of all the alleged negligent acts in this matter. It is therefore undisputed that K&K bears no liability in this matter as Richardson's actions were a superseding cause of any of K&K's alleged negligent acts.

B.  **UNSEAWORTHINESS OF THE M/V THE CONTENDER**

While a ship owner has a duty to provide a seaworthy vessel, the vessel need not be "accident free." *Miller v. Ocean Marine Operators, LLC*, No. 11-2214, 2012 WL 3637397 (E.D.La. Aug. 22, 2012); citing *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1432, 1432-33 (5th Cir.

1988). The plaintiff must prove that the vessel owner has failed to supply a vessel or vessel appurtenances that are reasonably fit for their intended use. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494 (1971). A vessel is not deemed unseaworthy because of an isolated personal negligent act of the crew, for that would destroy the distinction between unseaworthiness and negligence. *Daughdrill v. Ocean Drilling and Exploration Co. (ODECO)*, 709 F.Supp. 710, 712 (E.D.La. 1989); *Usner*, 400 U.S. 494. Further, the "mere existence of an alternative method of work … is insufficient of itself to render a vessel unseaworthy." *Miller,* 2012 WL 3637397; quoting *Rogers v. Eagle Offshore Drilling Servs.*, *Inc.,* 764 F.2d 300, 303 (5th Cir. 1985).

The "standard for establishing causation for an unseaworthiness claim is demanding" because "it requires showing (1) that the unseaworthiness played a substantial part in bringing about or actually causing the injury and that (2) the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Miller,* 2012 WL 3637397; quoting *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 380 (5th Cir. 2012). In fact, the standard for unseaworthiness is even stricter that the standard for a Jones Act claim for negligence. *Comeaux v. T.L. James & Co., Inc.*, 702 F.2d 1023 5th Cir. 1983). Furthermore, to establish a claim of unseaworthiness for operational negligence, a plaintiff must prove that the negligence "[is] 'pervasive' or repeated frequently for it to rise to the level of an unseaworthy condition." *Magee v. Ensco Offshore Co.*, No. 11-1351, 2012 WL 5877625 (E.D.La. Nov. 20, 2012).

The argument and analysis to refute plaintiffs' alleged unseaworthiness claims are similar to those raised above. Simply put, plaintiffs cannot satisfy their burden in proving that any alleged unseaworthiness of the M/V THE CONTENDER was a substantial part in bringing about or actually causing the plaintiffs' alleged injuries. Additionally, the alleged injuries were not

either a direct result or a reasonably probable consequence of any alleged unseaworthiness on behalf of K&K or the M/V CONTENDER, because again, regardless of the allegations advanced by plaintiffs, Richardson's decision to lift while the basket was not properly aligned is the obvious cause of plaintiffs falling from the basket. Accordingly, the alleged injuries were not the "direct result" or a "probable consequence" of any of the alleged unseaworthy conditions that plaintiffs claim.

Furthermore, plaintiffs have failed to show the existence of any "pervasive" or "frequent" acts of operational negligence on the part of the K&K crew. All alleged unseaworthy conditions that are deemed "operational" should be dismissed because of the absence of any factual support on this issue.

## CONCLUSION

In order to be entitled to summary judgment as a matter of law at this time, K&K prays that this Court, for purposes of this Motion alone, view all factual disputes in the light most favorable to plaintiffs and OLB. Even so, the undisputed evidence shows that none of the alleged acts of K&K formed a "substantial factor" in plaintiffs' alleged injuries. Again, and even assuming that this Court believes a genuine issue of material fact exists with regard to whether K&K's actions were a substantial factor, there is no genuine issue of material fact that Richardson's superseding negligent act, specifically his failure to ensure that the basket and boom were aligned before lifting, is a superseding cause that exonerates K&K from liability in this matter.

**WHEREFORE**, Defendants, K&K Offshore, LLC, P&M Marine, LLC, Atlantic Specialty Insurance Company, Markel American Insurance Company, ProCentury Insurance Company, Navigators Insurance Company, United States Fire Insurance Company, Lloyds

Underwriters, and Torus Insurance Company (UK) (herein referred to as "K&K Defendants" or

"K&K"), respectfully request that its Motion for Summary Judgment be granted since there are

no issues of material fact and K&K Defendants are entitled to judgment as a matter of law.

K&K Defendants pray that all claims asserted against them should be dismissed, with prejudice.

|  |  |
|---|---|
| **CERTIFICATE OF SERVICE** | Respectfully submitted, |
|  | **STAINES & EPPLING** |
| I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record via the service method indicated below: | |
|  | */s/ Jeff Peuler* |
|  | **ANTHONY J. STAINES** (#12388) |
| [   ] U.S. Mail | **JEFF D. PEULER**  (#30017) |
| [   ] Facsimile | **COREY P. PARENTON** (#32918) |
| [ x] Electronic Filing | **JAMES A. CROUCH, JR.** (#35729) |
| [   ] Hand Delivery | 3500 North Causeway Boulevard |
|  | Suite 820 |
| This 3rd day of November, 2015. | Metairie, Louisiana 70002 |
|  | Telephone: (504) 838-0019 |
|  | Facsimile: (504) 838-0043 |
| */s/ Jeff Peuler* | *Attorneys for Defendants, K&K* |
|  | *Offshore, LLC, P&M Marine, LLC,* |
|  | *Atlantic Specialty Insurance* |
|  | *Company, Markel American* |
|  | *Insurance Company, ProCentury* |
|  | *Insurance Company, Navigators* |
|  | *Insurance Company, United States* |
|  | *Fire Insurance Company, Lloyds* |
|  | *Underwriters, and Torus Insurance* |
|  | *Company (UK), Limited* |