UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALVIN HOWARD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-4811**<br>**c/w 13-6407 and 14-1188** |
| **OFFSHORE LIFTBOATS, LLC, ET AL.** | **SECTION "E" (5)** |

## ORDER AND REASONS

Before the Court are three motions *in limine* to limit or exclude expert testimony.[1] First, the K&K Defendants have filed a motion to exclude Robert Watson, an expert in crane operations, safety, and training retained by Offshore Liftboats, LLC ("OLB").[2] Second, the K&K Defendants have filed a motion to exclude Captain Gregory Daley, a vessel-captain expert retained by OLB.[3] Third, Plaintiffs Raymond Howard and Calvin Howard (collectively, "Plaintiffs") also move to exclude Captain Daley.[4] The Court has considered the briefs, the record, and the applicable law, and now issues its ruling. For the reasons that follow, the motions are **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This is a maritime personal injury case. It is undisputed that, on May 16, 2013, Plaintiffs Raymond Howard ("Raymond") and Calvin Howard ("Calvin") were injured during a personnel-basket transfer from the M/V Contender to the deck of the L/B Janie.[5] At the time of the accident, both Raymond and Calvin were employed by Offshore

---

[1] The motions presently before the Court are Record Documents 331, 334, and 336. At Record Document 331, the K&K Defendants move to exclude Robert Watson. At Record Document 334, the K&K Defendants move to exclude Captain Gregory Daley, and Plaintiffs move to exclude Captain Daley at Record Document 336.
[2] R. Doc. 331.
[3] R. Doc. 334.
[4] R. Doc. 336.
[5] *See* R. Doc. 321; R. Doc. 357 at 1–2; R. Doc. 376 at 1–2.

1

Liftboats, LLC ("OLB"), the owner and/or operator of the L/B Janie.[6] The M/V Contender was owned and/or operated by K&K Offshore, LLC.[7] As a result of the accident, both Raymond and Calvin filed suit against OLB—their Jones Act employer—and K&K Offshore, among others.

## LEGAL STANDARD

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as "the testimony is based upon sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."[8] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony satisfies Rule 702.[9] Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant.[10] The district court is offered broad latitude in making such expert testimony determinations.[11]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.[12] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[13] The Court is not concerned with whether

---

[6] R. Doc. 357 at 1–2; R. Doc. 376 at 1–2. *See also* R. Doc. 321.
[7] R. Doc. 357 at 1–2; R. Doc. 376 at 1–2. *See also* R. Doc. 321.
[8] FED. R. EVID. 702.
[9] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[10] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[11] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151–53 (1999).
[12] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[13] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).

the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable.[14] "It is the role of the adversarial system, not the court, to highlight weak evidence."[15]

## DISCUSSION

I. *ROBERT WATSON*

Robert Watson was hired by OLB as an expert on crane operations, safety, and training.[16] The K&K Defendants do not challenge Watson's knowledge or expertise with respect to cranes but do challenge his expertise with respect to vessel navigation, vessel operations, and drug impairment.[17] Specifically, the K&K Defendants take issue with certain opinions expressed by Watson in his expert report, arguing that Watson went beyond his expertise by opining on issues of vessel navigation, vessel operations, and drug use.[18]

First, the K&K Defendants ask the Court to prohibit Watson from offering his opinion on vessel navigation and vessel operations issues, arguing that those subjects exceed Watson's expertise.[19] OLB does not contend that Watson is an expert in vessel navigation or operations but believes the opinions expressed in his report are within his area of expertise and will be helpful to the jury.[20] The Court has reviewed, in depth, Watson's expert report. The opinions expressed therein do not address vessel operations in general, nor does Watson's report contain any opinions as to the proper techniques or practices of vessel navigation. Rather, the opinions expressed by Watson involve what a

---

[14] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[15] *Primrose*, 382 F.3d at 562.
[16] R. Doc. 381 at 1. Watson holds himself out, specifically, as an expert in "crane safety, inspection, maintenance, operation, and training of operators and riggers." R. Doc. 331-2 at 7 (Expert Report of Robert Watson).
[17] R. Doc. 331-1 at 3.
[18] R. Doc. 331-1 at 1.
[19] R. Doc. 333-1 at 5.
[20] R. Doc. 381 at 2, 3.

3

crane operator might reasonably expect or anticipate from a vessel involved in a personnel-basket transfer, including where the vessel should be positioned so that the crane operator can safely lower and raise the personnel basket.[21] Watson has over 35 years of experience, having served as the crane operator for a number of personnel-basket transfers himself.[22] Watson will thus be allowed to testify about the interactions between the crane operator, the vessel, and its crew during personnel-basket transfer operations and what the crane operator may reasonably expect or anticipate. However, Watson will not be allowed to testify regarding the seaworthiness of the M/V Contender or the captain's duty to ensure that the vessel was seaworthy and in good repair. Furthermore, Watson will not be allowed to testify regarding the proper means and methods of navigating a vessel in various unstable environmental conditions.

Second, the K&K Defendants seek to preclude Watson from offering testimony on the potential drug-induced impairment of K&K Offshore's deckhand.[23] The K&K Defendants contend Watson, in his expert report, "clearly relies" on allegations that Blake Ryland, K&K Offshore's signalman, was "impaired" or "under the influence" during the failed personnel transfer.[24] Watson, however, expresses no opinion in his expert report on Ryland's impairment, and OLB concedes that, at trial, there "will be no effort to elicit toxicology opinions or opinions regarding the effects of drug use."[25] Watson does state in his report that, "if any impairment contributed" to Ryland's mental state, Ryland should have recognized his duty to halt the transfer.[26] Watson will not be allowed to give

---

[21] *See* R. Doc. 331-2 at 5–7 (Expert Report of Robert Watson).
[22] *See* R. Doc. 331-3 (Curriculum Vitae of Robert Watson).
[23] R. Doc. 331-1 at 4.
[24] R. Doc. 331-1 at 5.
[25] R. Doc. 381 at 3. OLB contends it "does not intend to solicit an independent opinion from Watson regarding drug use by the M/V Contender's deckhand." R. Doc. 381 at 3.
[26] R. Doc. 331-2 at 6 (Expert Report of Robert Watson).

testimony regarding Ryland's impairment but will be allowed to testify that, as a general matter, members of the crew should not participate in personnel-basket transfers if impaired or under the influence of drugs or alcohol. The K&K Defendants do not challenge Watson's expertise in the area of crane safety, and his opinion that a member of a personnel-transfer team should not assist in the transfer if under the influence of or impaired by drugs is within his expertise.

## II. *CAPTAIN GREGORY DALEY*

Captain Gregory Daley was retained by OLB as an expert vessel captain. The K&K Defendants and Plaintiffs challenge several aspects of Captain Daley's expert report and the opinions expressed therein. Plaintiffs first argue that Captain Daley's report is replete with "substantial bias," which should disqualify him as an expert in this matter altogether.[27] Plaintiffs offer no specific reason as to why or how Captain Daley is biased, other than that he assumed all disputed facts in accordance with the testimony of OLB's witnesses;[28] this issue is dealt with below. With respect to any other bias or prejudice inherent in Captain Daley's testimony, Plaintiffs will be allowed to cross-examine Captain Daley at trial with respect to any financial interest he might have in this matter, including his compensation and whether it is contingent on success. Plaintiffs will also be allowed to cross-examine him on his work as an expert witness, including what percentage of his income it represents and whether his clients are plaintiffs or defendants. In short, the Plaintiffs will be allowed to fully explore Captain Daley's bias or prejudice on cross-examination. The Court declines to exclude Captain Daley's testimony on this ground.

---

[27] R. Doc. 336-1 at 5.
[28] *See* R. Doc. 336-1 at 7.

As mentioned above, Plaintiffs also are argue that Captain Daley's conclusions lack any scientific or other reasonable basis because they are based solely on the testimony of OLB witnesses and the resolution of any factual disputes in accordance with that testimony.[29] To address this concern, and to make expert testimony in this case more helpful to the jury, the Court will exercise its discretion under Federal Rule of Evidence 705 to require that Captain Daley first testify to the underlying facts, assumptions, and data on which he relied before expressing his opinions.[30] Obviously, the facts or data must comply with Federal Rule of Evidence 703.[31] It is assumed that opposing counsel will vigorously cross-examine Captain Daley on the bases for his opinions, including whether his opinions would change if the trier of fact finds the facts to be otherwise. The Court finds this to be the appropriate remedy for Plaintiffs' concerns and declines to exclude Captain Daley's testimony on this ground.

Plaintiffs further contend Captain Daley should specifically be precluded from testifying that:

1. Plaintiffs were negligent and/or that their negligence would have prevented the incident, and that their "attitude" toward safety was "cavalier," or using any language to suggest Plaintiffs were willful, wanton, grossly negligence (sic) at fault, or solely at fault.

2. OLB had no fault in the accident, i.e., that the basket swung to the jump rail because the Contender suddenly pulled off or prematurely departed.

3. That it was "safer" for Richardson to keep lifting once the basket was hung on the jump rail, out of his sight.[32]

---

[29] R. Doc. 336-1 at 7, 14–15.
[30] *See, e.g., U.S. v. Perocier*, 269 F.R.D. 103, 109, 115 (D.P.R. 2009) (finding it is within the court's discretion "to require an expert to testify to the underlying facts and data before giving opinion testimony"); *United States v. Brien*, 59 F.3d 274, 278 (1st Cir 1995); *Univ. of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1218 (1st Cir. 1993).
[31] This will apply to all retained experts who testify at trial.
[32] R. Doc. 336-1 at 6–7; R. Doc. 404 at 2.

6

Federal Rule of Evidence 704 clarifies that an opinion is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.[33] However, the Fifth Circuit has repeatedly held that Rule 704 does not authorize experts to render legal opinions or reach legal conclusions.[34] Moreover, testimony that tells the jury what conclusion to reach or merely states a legal conclusion is not helpful to the jury.[35] As a result, Captain Daley will be allowed to testify regarding the standard of care for issues within his expertise and whether OLB's conduct fell within that standard of care,[36] but he will not be allowed to testify that any party was negligent, grossly negligent, or contributorily negligent.[37]

Also, Captain Daley will not be allowed to testify that the Plaintiffs' attitude toward safety was "cavalier." Under the circumstances of this case, testimony that the Plaintiffs' attitude toward safety was "cavalier" would amount to a legal conclusion, as it would be tantamount to testifying that the Plaintiffs were negligent. Negligence is a legal conclusion to be reached by the factfinder. Moreover, even if such testimony did not amount to a legal

---

[33] FED. R. EVID. 704.

[34] *See, e.g., Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009); *United States v. $9,041,598.68*, 163 F.3d 238, 255 (5th Cir. 1998); *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *Owen v. Kerr-McGee*, 698 F.2d 236, 239 (5th Cir. 1983); *see also Lackey v. SDT Waste and Debris Servs., LLC*, No. 11-1087, 2014 WL 3866465, at *7–8 (E.D. La. Aug. 6, 2014). "It is the job of the Court—not the expert—to instruct the jury on the applicable law. *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ("[O]ur legal system reserves to the trial judge the role of deciding the law for the benefit of the jury.").

[35] *See, e.g., Snap-Drape*, 98 F.3d at 197–98 (noting that certain expert reports improperly contained legal conclusions, which "would be of no assistance in making findings of fact"); *Metrejean v. REC Marine Logistics, L.L.C.*, No. 08-5049, 2009 WL 3062622, at *2 (E.D. La. Sept. 21, 2009) (citing *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact" in understanding evidence or determining facts in issue.")).

[36] *See Richardson v. SEACOR Lifeboats, LLC*, No. 14-1712, 2015 WL 2193907, at *3 (E.D. La. May 11, 2015) (allowing expert to testify about the "reasonable standard of care" and whether the defendant "met that standard of care" but prohibiting expert from offering legal conclusions and opinions on whether certain parties were negligent).

[37] "The question of whether a party's acts or omissions constitute 'negligence' under the law calls for a legal conclusion." *Fulford v. Manson Const. Co.*, No. 09-3946, 2010 WL 1903865, at *1 (E.D. La. May 7, 2010) (citing *Owen*, 698 F.2d at 240). The Court recognizes that distinguishing between admissible testimony regarding the standard of care and inadmissible testimony on legal conclusions is often a fine line, but the Court must make such distinctions. *See Francois v. Diamond Offshore Co.*, No. 11-2956, 2013 WL 654635, at *2 (E.D. La. Feb. 21, 2013).

conclusion, its evidentiary value is substantially outweighed by a risk of unfair prejudice. The United States Supreme Court has held that "[a]pplying Rule 403 to determine if evidence is prejudicial . . . requires a fact-intensive, context-specific inquiry."[38] In this case, the Court finds the prejudice that would result from Captain Daley testifying that the Plaintiffs' attitude toward safety was "cavalier" outweighs any evidentiary value that such testimony may have, and the testimony must be excluded.

In a separate motion, the K&K Defendants argue that Captain Daley should be precluded from testifying at trial on any issues relating to impairment.[39] The particular opinion contested by the K&K Defendants reads: "It is possible that [deckhand Ryland's] judgment was impaired due to the THC found in his system."[40] OLB concedes, however, that it "does not intend to offer toxicological testimony regarding the effects of drugs."[41] Instead, OLB argues "it is within Captain Daley's expertise as an active Tidewater captain to testify regarding zero tolerance policies and the basis for such policies and procedures."[42] The Court agrees and Captain Daley will be allowed to offer this testimony. Captain Daley, however, is not a toxicologist and cannot offer any testimony, as OLB concedes he will not, on the effects of drug or alcohol use or on whether drug or alcohol use caused Ryland to become impaired.

## CONCLUSION

For the foregoing reasons, the motions *in limine*[43] are **GRANTED IN PART** and **DENIED IN PART** as set forth above.

---

[38] FED. R. EVID. 403. *See also Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) ("Applying Rule 403 to determine if evidence is prejudicial . . . requires a fact-intensive, context-specific inquiry.").
[39] R. Doc. 334 at 1.
[40] R. Doc. 334-1 at 2; R. Doc. 334-2 at 25 (Expert Report of Captain Gregory C. Daley).
[41] R. Doc. 384 at 3.
[42] R. Doc. 384 at 3.
[43] R. Docs. 331, 334, 336.

**New Orleans, Louisiana, this 13th day of January, 2016.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**