UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALVIN HOWARD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-4811**<br>**c/w 13-6407 and 14-1188** |
| **OFFSHORE LIFTBOATS, LLC, ET AL.** | **SECTION "E" (5)** |

ORDER AND REASONS

Before the Court are two motions *in limine* to limit or exclude the expert testimony of Jack Madeley, a purported offshore crane and safety expert retained by Plaintiffs Calvin Howard and Raymond Howard.[1] The motions were filed individually by the K&K Defendants[2] and Offshore Liftboats, LLC ("OLB") (collectively, "Defendants").[3] Plaintiff Calvin Howard opposes the motion. The Court has considered the briefs, the record, and the applicable law, and now issues its ruling. For the reasons that follow, the motions are **GRANTED**.

BACKGROUND

This is a maritime personal injury case. It is undisputed that, on May 16, 2013, Plaintiffs Raymond Howard ("Raymond") and Calvin Howard ("Calvin") were injured during a personnel-basket transfer from the M/V Contender to the deck of the L/B Janie.[4] At the time of the accident, both Raymond and Calvin were employed by Offshore Liftboats, LLC ("OLB"), the owner and/or operator of the L/B Janie.[5] The M/V Contender

---

[1] R. Docs. 333, 337.
[2] R. Doc. 333. The K&K Defendants consist of K&K Offshore, LLC, and its many insurers—P&M Marine, LLC; Atlantic Specialty Insurance Company; Markel American Insurance Company; ProCentury Insurance Company; Navigators Insurance Company; United States Fire Insurance Company; Lloyds Underwriters; and Torus Insurance Company (UK), Limited. They are referred to herein, collectively, as "the K&K Defendants."
[3] R. Doc. 337.
[4] *See* R. Doc. 321.
[5] *See generally* R. Doc. 321.

1

was owned and/or operated by K&K Offshore, LLC.[6] As a result of the accident, both Raymond and Calvin filed suit against OLB—their Jones Act employer—and K&K Offshore, among others.

## LAW AND ANALYSIS

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as "the testimony is based upon sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."[7] Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant.[8] The district court is offered broad latitude in making such expert testimony determinations.[9] The party seeking to offer expert testimony bears the burden of establishing, by a preponderance of the evidence, that "(1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable."[10]

According to the Plaintiffs, Jack Madeley was retained as an offshore crane expert and an expert in marine safety.[11] The Pretrial Order describes Madeley's testimony as bearing on "failings of the crane operator, deck signalman and overall negligence and

---

[6] *See generally* R. Doc. 321.
[7] FED. R. EVID. 702.
[8] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[9] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151–53 (1999).
[10] *Motio, Inc. v. BSP Software, LLC*, No. 4:12-CV-647, 2016 WL 105299, at *1 (E.D. Tex. Jan. 8, 2016) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590–91 (1993)). *See also Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002); *AMW Sports, LLC v. State Farm Fire and Cas. Co.*, No. 10-651-SCR, 2012 WL 39380, at *1 (M.D. La. Jan. 9, 2012) ("Plaintiffs, the proponents of the expert evidence at issue, have the burden of demonstrating that their expert is qualified to testify in the field that he is offered and that his opinions are both reliable and relevant.").
[11] *See* R. Doc. 363 at 2.

unseaworthiness of the crews of the two vessels involved in the failed personnel transfer."[12]

Although the Plaintiffs say that Madeley will testify regarding "overall negligence and unseaworthiness of the crews," the portions of his report that are specific enough to be of any use deal with crane operations, personnel-basket transfers, and related practices.[13] To illustrate this point, Madeley's expert report states, in pertinent part:

- "It appears the crane operator negligently failed to center the boom directly over the basket before beginning the lift."

- "The crane operator failed to have proper radio contact and communications with the CONTENDER."

- "The crane operator should have ensured he had visual contact with the basket and signal person throughout the task."

- "Once the crane operator lost sight of the lift, he should have stopped hoisting the basket."

- "The crane operator should have made sure he received the CONTENDER'S deck hand's signals prior to lowering or raising the personnel basket."

- "The crane operator on the L/B JANIE should have stopped the job if the CONTENDER was not holding its position."

- "The crane operator failed to center the boom directly over the basket and did not give the CONTENDER'S deck hand an opportunity to signal any re-positioning of the boom because the crane operator proceeded to lift without receiving the signal."

As a result, the Court will examine Madeley's qualifications to testify as an expert witness on offshore crane operations and personnel-basket transfers. Plaintiffs bear the burden

---

[12] R. Doc. 467 at 89.

[13] In his report, Madeley references OSHA regulations, but the Pretrial Order does not list the applicability of OSHA regulations as a contested issue of law in the case. OSHA regulations are not relevant. R. Doc. 467 at 40. Madeley opines in his report that K&K failed to administer drug tests timely. This is not in dispute and does not justify the need for Madeley's expert testimony. Madeley mentions in his report the "possible impairment" of Blake Ryland. Madeley is not a toxicologist and he acknowledges he is not qualified to testify whether someone was impaired or under the influence of drugs at the time of an accident.

3

of establishing, by a preponderance of the evidence, that Madeley is qualified to offer expert testimony in these fields and that his testimony would otherwise be admissible under Federal Rule of Evidence 702. The Court must make this determination based on Madeley's expert report and curriculum vitae ("C/V"), which were attached to the Defendants' motions *in limine*,[14] and excerpts from Madeley's deposition provided by the Plaintiffs[15] and Defendants.[16]

Madeley has held several engineering positions with a variety of companies.[17] Insofar as that experience relates to crane operations and personnel-basket transfers, however, Madeley's experience is minimal. Madeley's C/V indicates that, from 1975 through 1985, he worked as a safety engineer for Marathon Oil Company, during which time he engaged in "offshore platform review" and "safety systems design review."[18] There is no indication that his duties or responsibilities during this time involved crane operations or personnel-basket transfers. Madeley has attended a few seminars and conferences with respect to offshore crane operations. For example, Madeley's C/V indicates he participated in a conference on "OSHA Cranes, Derricks, Hoists, Elevators and Conveyors" in 2012.[19] Madeley also attended a conference on "Mobile Cranes and Drilling Practice" in 1990 and a conference on "Basic Crane Operator Safety" in 1982.[20] Madeley's professional experience reflected by his C/V, insofar as it concerns crane operations, stops there. Madeley's C/V contains no further information to document his experience with crane operations during personnel-basket transfers. Madeley's expert

---

[14] *See generally* R. Doc. 333-2; R. Doc. 337-3.
[15] R. Doc. 363-1.
[16] R. Doc. 337-4.
[17] *See generally* R. Doc. 333-2 at 14–15.
[18] R. Doc. 333-2 at 15.
[19] R. Doc. 333-2 at 16.
[20] R. Doc. 333-2 at 17.

report summarizes his background and experience but provides no further evidence of the basis of his purported expertise. Madeley conceded in his deposition that while he had a crane operator's certification in the 1980s, he has not operated an offshore crane since then.[21]

Plaintiffs contend, based on Madeley's deposition testimony, that Madeley has participated in "hundreds" of personnel-basket transfers and has "observed more than that."[22] Observing and participating in personnel-basket transfers does not render Madeley qualified to testify as an expert witness on offshore crane operations or the practices that should be employed when performing personnel-basket transfers.[23] If this were the case, every seaman working in the Gulf of Mexico would be qualified to testify as an expert witness on personnel-basket transfers.

The Court finds that Plaintiffs have failed to carry their burden of establishing, by a preponderance of the evidence, that Madeley is qualified by scientific, technical or other specialized knowledge to testify as an expert with respect to crane operations and personnel-basket transfers. To the extent that Madeley is offered to testify on issues of general safety, the Court notes that, "[i]ssues of general safety and negligence are well within the province for a jury to decide without the aid of an expert."[24]

## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Defendants' motions *in limine* to exclude or limit the testimony of Jack Madeley[25] are hereby **GRANTED**.

---

[21] R. Doc. 337-4 at 5-6.
[22] R. Doc. 363 at 4; R. Doc. 363-1 at 6–7 (Deposition of Jack Madeley).
[23] The Court previously permitted Madeley to testify as an expert witness on issues related to crane operations and personnel-basket transfers. *See Richardson v. SEACOR Lifeboats, LLC*, No. 14-1712, 2015 WL 2193907 (E.D. La. May 11, 2015). That was a bench trial, however, not a jury trial like the present case, and the Court specifically found "most of the objectives of *Daubert* [were] not implicated." *Id.* at *2.
[24] *Fulford v. Manson Const. Co.*, No. 09-3946, 2010 WL 1903865, at *2 (E.D. La. May 7, 2010).
[25] R. Docs. 333, 337.

New Orleans, Louisiana, this 31st day of January, 2016.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**