UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALVIN HOWARD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-4811**<br>**c/w 13-6407 and 14-1188** |
| **OFFSHORE LIFTBOATS, LLC, ET AL.** | **SECTION "E" (5)** |

## ORDER AND REASONS

Before the Court is motion *in limine* to limit or exclude the proposed expert testimony of Dr. John Thompson.[1] Dr. Thompson is an expert psychiatrist retained by the K&K Defendants[2] and Offshore Liftboats, LLC ("OLB") (collectively, "Defendants").[3] The K&K Defendants and OLB oppose Plaintiffs' motion *in limine*.[4] The Court has considered the briefs, the record, and the applicable law, and now issues its ruling. For the reasons that follow, the motion is **DENIED**.

## BACKGROUND

This is a maritime personal injury case. It is undisputed that, on May 16, 2013, Plaintiffs Raymond Howard ("Raymond") and Calvin Howard ("Calvin") were injured during a personnel-basket transfer from the M/V Contender to the deck of the L/B Janie.[5] At the time of the accident, both Raymond and Calvin were employed by Offshore Liftboats, LLC ("OLB"), the owner and/or operator of the L/B Janie.[6] The M/V Contender was owned and/or operated by K&K Offshore, LLC.[7] As a result of the accident, both

---

[1] R. Doc. 345.
[2] The K&K Defendants consist of K&K Offshore, LLC, and its many insurers—P&M Marine, LLC; Atlantic Specialty Insurance Company; Markel American Insurance Company; ProCentury Insurance Company; Navigators Insurance Company; United States Fire Insurance Company; Lloyds Underwriters; and Torus Insurance Company (UK), Limited. They are referred to herein, collectively, as "the K&K Defendants."
[3] *See* R. Docs. 345, 375, 383.
[4] R. Docs. 375, 383.
[5] *See* R. Doc. 321.
[6] *See generally* R. Doc. 321.
[7] *See generally* R. Doc. 321.

1

Raymond and Calvin filed suit against OLB—their Jones Act employer—and K&K Offshore, among others.

## LEGAL STANDARD

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as "the testimony is based upon sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."[8] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony satisfies Rule 702.[9] Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant.[10] The district court is offered broad latitude in making such expert testimony determinations.[11]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.[12] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[13] The Court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the

---

[8] FED. R. EVID. 702.
[9] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[10] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[11] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151–53 (1999).
[12] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[13] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).

opinion is reliable.[14] "It is the role of the adversarial system, not the court, to highlight weak evidence."[15]

## DISCUSSION

First, Plaintiffs challenge Dr. Thompson's qualifications, generally, as well as the methodology he employed in concluding that Calvin Howard is malingering.[16] Plaintiffs contend Dr. Thompson failed to "develop and proffer his own opinions" and instead "choose to parrot the opinion of Dr. Kevin Greve," which "triggers concerns about Dr. Thompson's qualifications and the reliability of his methodology."[17] Plaintiffs note, specifically, that "Dr. Thompson placed wholesale reliance on Dr. Greve's report to form his opinion."[18] As a result, Plaintiffs contend "Dr. Thompson's proposed testimony about malingering should be excluded because it is not an independent opinion he formed from examining the facts or data detailing Dr. Greve's methodology."[19]

Federal Rule of Evidence 703 provides: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."[20] Courts have held, under Rule 703, that an expert may "rely on information supplied by another expert witness."[21] "An expert can [even] rely upon otherwise inadmissible evidence as long as it is of a type reasonably relied upon by experts in the particular field."[22] "[W]hen

---

[14] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[15] *Primrose*, 382 F.3d at 562.
[16] R. Doc. 345-1 at 10.
[17] R. Doc. 345-1 at 13.
[18] R. Doc. 345-1 at 14.
[19] R. Doc. 345-1 at 13.
[20] FED. R. EVID. 703.
[21] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Smith Tank & Steel, Inc.*, No. 3:11-CV-00830, 2014 WL 5794952, at *4 (M.D. La. Nov. 6, 2014) (quoting *BP Exploration & Prod., Inc. v. Callidus Tech., L.L.C.*, No. 02-2318, 2003 WL 26118097, at *2 (E.D. La. Apr. 8, 2003)) (internal quotation marks omitted) (citing *Janopoulos v. Harvey L. Walner & Assocs., Ltd.*, 866 F. Supp. 1086, 1095 (N.D. Ill. 1994)). *See also Vienne v. Am. Honda Motor Co.*, No. 99-3716, 2001 WL 83260, at *2–3 (E.D. La. Jan 26, 2001).
[22] *Smith Tank & Steel*, 2014 WL 5794952, at *4 (citing FED. R. EVID. 703; *Monsanto Co. v. David*, 516 F.3d 1009, 1015–16 (5th Cir. 2008) (finding an expert could rely upon a report prepared by someone else)). *See also Bonds v. Padlock*, No. 06-7830, 2008 WL 4889794, at *3–4 (E.D. La. Nov. 10, 2008).

an expert relies on the opinion of another, such reliance goes to the weight, not the admissibility of the expert's opinion."[23] The Court has informed the parties that Dr. Greve will be allowed to testify with respect to the report he rendered. Therefore, the above-listed critiques of Dr. Thompson's opinions should be addressed, not via motion *in limine*, but on cross-examination in light of the factual record developed at trial.

Second, Plaintiffs argue Dr. Thompson's proposed testimony with respect to malingering should be excluded because it "does not assist the jury and, on the contrary, invades the jury's exclusive province of making credibility determinations."[24] The Court disagrees. As recognized by the Defendants, several courts in this district have allowed experts to testify with respect to malingering and whether a certain individual was, or was not, malingering.[25] This Court likewise finds that such testimony on malingering from Dr. Thompson will not invade the province of the jury but would be helpful in making factual determinations with respect to Calvin Howard's past, present, and future medical condition.

Third, Plaintiffs contend "Dr. Thompson's opinion that Calvin Howard is malingering is not based on sufficient facts or data so as to be reliable."[26] In support, Plaintiffs note that "Dr. Thompson's deposition testimony revealed that he had not reviewed a substantial amount of critical information relating to Calvin Howard's medical treatment."[27] The Defendants, in response, point to Dr. Thompson's deposition testimony that he felt Calvin's treating physicians produced reports which, without more, enabled

---

[23] *Cedar Ridge, LLC v. Landmark Am. Ins. Co.*, No. 13-672, 2014 WL 722219, at *3 (E.D. La. Feb. 21, 2014) (quoting *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 9 (1st Cir. 2001)).
[24] R. Doc. 345-1 at 18.
[25] *See* R. Doc. 375 at 12 (citing *Bonds v. Padlock*, No. 06-7830, 2008 WL 4889794 (E.D. La. Nov. 10, 2008); *Guilbeau v. W.W. Henry Co.*, 85 F.3d 1149 (5th Cir. 1996); *Tate v. Zapata Gulf Marine Corp.*, No. 93-5, 1993 WL 379561 (E.D. La. Sept. 13, 1993); *Araujo v. Treasure Chest Casino, LLC*, No. 97-3043, 1999 WL 219771 (E.D. La. Apr. 14, 1999)).
[26] R. Doc. 345-1 at 19.
[27] R. Doc. 345-1 at 19.

him to understand their opinions.[28] Furthermore, Dr. Thompson's expert report reveals he relied on a substantial number of medical records, depositions, and other documents in forming his opinions.[29] Whether Dr. Thompson relied on adequate information goes to the weight to be assigned his testimony, as it involves the bases and sources upon which Dr. Thompson relied in reaching his conclusions in this case. This is a matter appropriately dealt with on cross-examination at trial.

Fourth, Plaintiffs contend Dr. Thompson's testimony would be cumulative of the testimony to be offered by Dr. Greve.[30] Plaintiffs argue that "[a]llowing multiple experts to provide a shared opinion on the same subject is unduly cumulative, repetitive, and a waste of the Court's time, as no new information will be presented to the jury."[31] In sum, Plaintiffs contend the "Defendants have no justification for calling two experts to echo one another's opinions," and that such cumulative testimony should be excluded under Federal Rule of Evidence 403.[32] In response, the Defendants note that Dr. Thompson is an expert psychiatrist, while Dr. Greve is an expert neuropsychologist.[33] Thus, Defendants maintain that Drs. Thompson and Greve are "involved in different medical

---

[28] *See* R. Doc. 375 at 13; R. Doc. 375-1. However, the Defendants failed to attach the relevant portion of Dr. Thompson's deposition. The Defendants did attach certain pages of Dr. Thompson's deposition, but the attached pages are not those which the Defendants refer to in their opposition memorandum. R. Doc. 375 at 13; R. Doc. 375-1.

[29] *See* R. Doc. 375-3 at 2 (Expert Report of Dr. John Thompson). Dr. Thompson's expert report states he relied on information from: (1) Acadian Ambulance; (2) Christus St. Elizabeth Hospital; (3) River Parishes Hospital; (4) UT Physicians – Zoran Cupic, MD; (5) Brignac Physical Therapy – Chantel Brignac, PT; (6) Memorial MRI & Diagnostic; (7) A. David Axelrad, MD & Associates, PA; (8) Ralph Lilly, MD – Neurology of Acquired Brain Injury; (9) Larry Pollock, PhD – Project Reentry – Brain Injury Rehabilitation Programs; (10) Memorial Hermann Radiology; (11) Christopher Cenac, MD; (12) SBS – Southern Brain and Spine – Everett Robert, MD; (13) University General Hospital; (14) Touchstone Neurorecovery Center; (15) Pharmacy Records; (16) Rodney Isom, PhD; (17) US Coast Guard Report of Marine Accident; (18) Offshore Liftboats, LLC Vessel Accident Report; (19) K&K Offshore, LLC – Incident Report; (20) Pinnacle Engineering, Inc. – Report of Injury; (21) Jefferson Neurobehavioral Group – Kevin Greve, PhD; (21a) Statements by Captain and coworkers the date of the incident; (21b) Dr. Shelley Savant; (21c) Dr. Gorman; (22) Deposition of Calvin Howard. *See* R. Doc. 375-3 at 2 (Expert Report of Dr. John Thompson).

[30] R. Doc. 345-1 at 21.
[31] R. Doc. 345-1 at 21.
[32] R. Doc. 345-1 at 21–22.
[33] R. Doc. 375 at 13.

5

disciplines," and will testify with respect to different aspects of Calvin Howard's psychological condition and treatment.[34] The Court agrees with the Defendants and finds the testimony would not be cumulative.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Plaintiffs' motion *in limine*[35] to exclude the proposed testimony of Dr. John Thompson be and hereby is **DENIED**.

**New Orleans, Louisiana, this 5th day of February, 2016.**

*[signature: Susie Morgan]*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[34] Moreover, OLB represents that it "does not intend to offer duplicative testimony from Dr. Thompson and Dr. Greve." R. Doc. 383 at 6.
[35] R. Docs. 345.

6