## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CALVIN HOWARD, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                   **NO.  13-4811**
                                             **c/w 13-6407 and 14-1188**

**OFFSHORE LIFTBOATS, LLC,**                 **SECTION "E" (5)**
**ET AL.**

### ORDER AND REASONS

This matter comes before the Court post-judgment for the taxation of costs under Rule 54(d) and Rule 68(d) of the Federal Rules of Civil Procedure. Plaintiffs Raymond Howard and Calvin Howard and Defendant Offshore Liftboats, LLC ("OLB"), have filed motions to tax costs, with each party representing that he, or it, is the prevailing party in this matter and is entitled to costs under Rule 54(d).[1] OLB also seeks an award of post-offer of judgment costs pursuant to Rule 68(d), noting it made offers of judgment to both Raymond Howard and Calvin Howard, which were not accepted, and arguing Raymond and Calvin subsequently recovered a less favorable judgment at trial.[2]

For the following reasons, the Court finds that Plaintiffs Raymond Howard and Calvin Howard are the prevailing parties in this action and awards them 50% of their pre-offer costs under Rule 54(d). The Court also finds that, pursuant to Rule 68(d), OLB is entitled to recover its post-offer costs.

### BACKGROUND

The matter of *Calvin Howard, et al. v. Offshore Liftboats, LLC, et al.* proceeded to a jury trial on January 25, 2016. The trial involved the claims of Plaintiffs Calvin Howard and Raymond Howard against their employer, Offshore Liftboats, LLC ("OLB"); K&K

---

[1] R. Docs. 875, 877, 878.
[2] *See* R. Doc. 875.

Offshore, LLC ("K&K"); and the insurers of both entities.[3] The claims asserted by the Plaintiffs were for various personal injuries, including alleged traumatic brain injuries, which the Plaintiffs claim they sustained during a failed personnel-basket transfer in the offshore waters of the Gulf of Mexico on May 16, 2013.[4] Plaintiffs brought claims against OLB, their employer, for Jones Act negligence; the unseaworthiness of OLB's vessel, the L/B Janie, under the General Maritime Law; and maintenance and cure.[5] Plaintiffs initially brought claims against K&K, a non-employer third party, for negligence and unseaworthiness under the General Maritime Law.[6] Plaintiffs' claims that K&K's vessel, the M/V Contender, was unseaworthy were dismissed prior to trial.[7] Plaintiffs settled their remaining claims with K&K after trial commenced but prior to the submission of the case to the jury for decision.

The trial lasted approximately four (4) weeks, concluding on February 19, 2016, when the jury returned its verdict. The jury concluded that both OLB and K&K were negligent and that each one's negligence played a part, however slight, in causing Plaintiffs' injuries.[8] With respect to Plaintiffs' unseaworthiness claims against OLB, the jury found that OLB's vessel, the L/B Janie, was not unseaworthy under the General Maritime Law.[9] The jury also found that neither Raymond Howard nor Calvin Howard was negligent.[10] In allocating fault between OLB and K&K, the jury found OLB to be 20% at fault for the accident and K&K to be 80% at fault.[11]

---

[3] R. Doc. 757 at 6–7 (Pretrial Order).
[4] *See generally* R. Doc. 757 at 5–8, 15–22 (Pretrial Order).
[5] *See* R. Doc. 218 (Second Amended & Supplemental Complaint).
[6] R. Doc. 218 (Second Amended & Supplemental Complaint).
[7] R. Doc. 705 at 2.
[8] R. Doc. 829 at 2–3 (Jury Verdict).
[9] R. Doc. 829 at 6 (Jury Verdict).
[10] R. Doc. 829 at 4–5 (Jury Verdict).
[11] R. Doc. 829 (Jury Verdict).

## LAW AND ANALYSIS

Rule 54 of the Federal Rules of Civil Procedure creates "a strong presumption that the prevailing party will be awarded costs."[12] Rule 54(d) provides, in part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Thus, to determine whether a party can recover its costs under Rule 54(d), the Court must determine whether that party is the "prevailing party" within the meaning of Rule 54(d).[13] After prevailing-party status has been determined, the Court then must ask whether a federal statute, a Federal Rule of Civil Procedure, or a federal court order provides that costs, for one reason or another, should not be awarded to the prevailing party.

1. _Who are the Prevailing Parties under Rule 54(d)?_

"The 'prevailing party' determination is a clear, mechanical one; when a judgment is entered in favor of a party, it is the prevailing party."[14] In this case, judgment was entered in favor of Plaintiffs Raymond Howard and Calvin Howard because each plaintiff prevailed on his negligence claim against OLB.[15] As explained in the judgment, the jury found that both K&K and OLB were negligent and that their negligence was a substantial factor in causing Plaintiffs' injuries.[16] Furthermore, the jury found that neither Raymond nor Calvin were at fault, assigning K&K 80% of the fault and OLB 20%.

---

[12] _Schwarz v. Folloder_, 767 F.2d 125, 131 (5th Cir. 1985) (holding that when a district court declines to award costs to a prevailing party, it should state its reasons for doing so); _Perry v. Port of Houston Authority_, 31 F. App'x 153 (5th Cir. 2001) (remanding the issue of costs to the district court for reconsideration for failing to award costs to the prevailing party and not stating its reasons for doing so); _Abate v. Kansas City Southern Ry. Co._, No. 90-1219, 1991 WL 195518, at n. 3 (E.D. La.1991) (Schwartz, J.) (quoting _Folloder_, _supra_, and denying plaintiff's motion to prorate costs).

[13] _See, e.g., Schwarz_, 767 F.2d at 130.

[14] _Allianz Versicherungs, AG v. Profreight Brokers, Inc._, 99 F. App'x 10, 13 (5th Cir. 2004) (citing _Baker v. Bowen_, 839 F.2d 1075, 1081, (5th Cir. 1988); _see also_ 10 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 54.101[3] (3d ed. 1998) ("[T]he prevailing party is the party in whose favor judgment was entered, even if that judgment does not fully vindicate the litigant's position in the case.")).

[15] R. Doc. 854 (Judgment).

[16] R. Doc. 854 (Judgment).

OLB points out, however, that, although the Plaintiffs prevailed on their negligence claims and were not allocated any fault, the Plaintiffs "did not prevail on their general maritime law claims for unseaworthiness or for punitive damages for failure to pay cure."[17] For that reason, among others, OLB argues it was the prevailing party. Having reviewed Fifth Circuit authority, the Court finds that OLB's argument is without merit. The Fifth Circuit, interpreting Rule 54(d), has held that:

> A party need not prevail on all issues to justify a full award of costs . . . . Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d). A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all of his claims. Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced.[18]

In this case, Plaintiffs prevailed on some, but not all, of their claims. Because the Plaintiffs prevailed on their negligence claims against OLB, and because judgment was entered in favor of the Plaintiffs, the Court finds that Plaintiffs Raymond Howard and Calvin Howard are the prevailing parties in this matter under Federal Rule of Civil Procedure 54(d).

### 2. *Does a federal statute, rule, or court order "provide otherwise"?*

Although Rule 54(d) does not require that costs be awarded to the prevailing party, it states that costs *should* be awarded unless a federal statute, a federal rule, or a court order provides otherwise. Federal Rule of Civil Procedure 68 is one such rule that "provides otherwise" in certain circumstances.

Rule 68 outlines the procedure for making a pre-trial offer of judgment and provides for the potential consequences to a plaintiff who does not accept such an offer:

---

[17] R. Doc. 875-2 at 3.
[18] *United States v. Mitchell*, 580 F.2d 789, 793 (5th Cir. 1978) (alterations omitted) (citations omitted) (quotation marks omitted), *superseded by statute on other grounds*, 42 U.S.C. § 3614. *See also Tempest Publ'g, Inc. v. Hacienda Records and Recording Studio, Inc.*, 141 F. Supp. 3d 712, 718 (S.D. Tex. 2015).

**(a) Making an Offer; Judgment on an Accepted Offer.** At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

. . . .

**(d) Paying Costs After an Unaccepted Offer.** If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.[19]

Rule 68 is mandatory and, if it applies, leaves no room for discretion by the district court. That is, if (1) the offer of judgment is not accepted and (2) the final judgment that the plaintiff obtains is less favorable than the offer, Rule 68 *requires* that the plaintiff pay the defendant's post-offer costs.[20] Furthermore, when considered in conjunction with Rule 54(d), "Rule 68 operates against a prevailing plaintiff who does not accept a losing defendant's offer, resulting in the loss of some of the benefits of the prevailing party's victory (costs pursuant to Rule 54(d)) in the event his recovery is less than the rejected offer."[21] In other words, if the plaintiff is the "prevailing party" under Rule 54(d) but (1) did not accept an offer of judgment made under Rule 68, and (2) ultimately obtains a judgment that is less favorable than the offer of judgment, the plaintiff can only recover his pre-offer costs and must pay the defendant's post-offer costs.[22]

---

[19] FED. R. CIV. P. 68(a), (d).

[20] *Johnston v. Penrod Drilling Co.*, 803 F.2d 867, 869 (5th Cir. 1986).

[21] *Carino v. Wal-Mart Louisiana, LLC*, No. 05CV1978, 2007 WL 977553, at *1 (W.D. La. Mar. 28, 2007) (citing *Louisiana Power & Light v. Kellstrom*, 50 F.3d 319, 333–34 (5th Cir. 1995)).

[22] *See, e.g., Brown v. Wal-Mart Stores, Inc.*, No. 6:10-1402, 2013 WL 3935029, at *1 (W.D. La. July 26, 2013) (citations omitted) (internal quotation marks omitted) (alterations omitted) ("[U]nder Rule 68, when a plaintiff does not accept a defendant's Offer of Judgment which is more favorable than the Judgment the plaintiff ultimately obtains, the plaintiff must pay the defendant's costs which were incurred after the Offer of Judgment was made. Further, the plaintiff cannot recover otherwise awardable costs incurred after the date of the offer.").

5

OLB extended separate offers of judgment under Rule 68 to Calvin Howard and Raymond Howard on January 8, 2016.[23] The offer of judgment made to Calvin was in the amount of $875,000.00,[24] and the offer of judgment made to Raymond was in the amount of $500,000.00.[25] The Court will first analyze whether OLB's offer of judgment to Calvin in the amount of $875,000.00 was more favorable than the judgment that Calvin ultimately obtained. The Court will subsequently engage in the same analysis with respect to Raymond and OLB's $500,000.00 offer of judgment to him.

     a.  <u>Calvin Howard</u>

As stated previously, on January 8, 2016, OLB made an offer of judgment to Calvin Howard in the amount of $875,000.00.[26] The offer of judgment stated, in part, that:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Offshore Liftboats offers to allow Calvin Howard to take judgment against it as to the claims asserted by Calvin Howard in the above captioned matter in the total sum of $875,000.00.
>
> This offer of judgment is intended to resolve all of Calvin Howard's claims in this action, including without limitation, any and all claims for compensatory damages, statutory damages, attorneys fees, litigation expenses, and costs of suit.[27]

Calvin did not accept OLB's $875,000.00 offer of judgment, opting instead to proceed to trial and present his case to a jury of his peers. At the conclusion of trial, the jury returned a verdict awarding Calvin damages in the total amount of $3,262,100.00,[28] for which OLB was found to be 20% responsible.[29] The jury also found that, with respect

---

[23] R. Docs. 875-8, 875-9.
[24] R. Doc. 875-8.
[25] R. Doc. 875-9.
[26] R. Doc. 875-8.
[27] R. Doc. 875-8.
[28] R. Doc. 829 at 8 (Physical pain and suffering and loss of enjoyment of life in the past ($275,000); Physical pain and suffering and loss of enjoyment of life in the future ($175,000); Mental anguish in the past ($27,500); Mental anguish in the future ($300,000); Loss of earning capacity, including the value of fringe benefits, in the past ($234,600); Loss of earning capacity, including the value of fringe benefits, in the future ($2,200,000); and Medical expenses in the future ($50,000)).
[29] R. Doc. 829 at 7.

to Calvin's claims for maintenance and cure under the General Maritime Law, Calvin would reach maximum medical improvement ("MMI") on April 30, 2017.[30] The jury's verdict became the judgment of the Court on March 23, 2016.[31]

OLB's 20% of Calvin's damages award, as reflected in the judgment, amounts to $652,420.00, which is clearly less than OLB's $875,000.00 offer of judgment to Calvin. The Rule 68 analysis, however, does not end here. The Court must add the other amounts to which Calvin is entitled, such as (1) Calvin's pre-offer of judgment costs,[32] and (2) the future maintenance-and-cure to which Calvin is entitled until April 30, 2017 to determine whether the amount reflected in the judgment is less than the offer of judgment. Calvin contends the amounts for damages, pre-offer costs, and maintenance are:

| Damages | $652,420.00 |
|---|---|
| Pre-offer costs | $46,634.96 |
| Maintenance | $14,875.00 |
| **Total (without cure)** | **$713,929.96** |

Calvin represents that his pre-offer costs total $46,634.96.[33] OLB takes no position on the amount Calvin's pre-offer costs. The Court has wide discretion to award to the prevailing party the sum of its pre-offer costs or to award a percentage of the party's pre-offer costs.[34] The Fifth Circuit has stated, specifically, that "Rule 54(d) gives the district court the necessary discretion to tax costs against the party who should equitably bear

---

[30] R. Doc. 829 at 10.
[31] R. Doc. 854.
[32] *See, e.g., Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *21 (N.D. Tex. Dec. 20, 2005).
[33] R. Doc. 886 at 7.
[34] *See, e.g., Weiser v. Horace Mann Ins. Co.*, No. 06-9080, 2009 WL 5194972, at *3 (E.D. La. May 15, 2009); *see also Breeland v. Hide-A-Way Lake, INc.*, 585 F.2d 716, 722 (5th Cir. 1978) ("It is well established that the district court enjoys discretion in determining who shall bear the costs of litigation and how much of the costs shall be apportioned to a taxed party.").

them."[35] In this case, OLB was found to be only 20% at fault. Moreover, Calvin was only partially successful on his claims against OLB. For these reasons, the Court exercises its discretion and will make only a partial award of costs to Calvin, awarding him 50% of his pre-offer costs. For purposes of this analysis only, the Court will use 50% of Calvin's figure, which is $23,317.48.

As noted above, the jury found that Calvin would reach MMI on April 30, 2017. The effect of the jury's MMI finding is that OLB is obligated, until April 30, 2017, to pay any cure expenses actually incurred by Calvin and to pay Calvin maintenance at the rate of $35.00 per day. Calvin represents that the value of the future maintenance to which he is entitled from OLB is $14,875.00.[36] Calvin calculated this figure by multiplying the approved rate of maintenance, $35.00 per day, by 425 days—the number of days in between March 1, 2016, and April 30, 2017, the date on which the jury concluded Calvin would reach MMI. OLB does not dispute that Calvin is entitled to $14,875.00 in future maintenance payments. In fact, OLB makes no representation as to the value of the future maintenance payments that are owed to Calvin. Therefore, for purposes of this analysis only, the Court will use Calvin's figure with respect to the value of his maintenance award.

With respect to cure, Calvin is entitled to receive cure payments for medical expenses that he actually incurs prior to reaching MMI.[37] For present purposes, to determine whether the value of Calvin's final award is less than or exceeds OLB's Rule 68 offer of judgment, the Court will make a realistic assessment of the value of Calvin's future cure award.[38] Calvin represents that his life care planner, "Dr. Cornelius Gorman, testified

---

[35] *Johnston*, 803 F.2d at 870–71. *See also Pacheco v. Mineta*, 448 F.3d 783, 793–94 (5th Cir. 2006).
[36] R. Doc. 886 at 7.
[37] *See, e.g., Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) ("The duty to provide cure encompasses . . . the obligation to *reimburse* medical expenses actually incurred.") (emphasis added).
[38] *See, e.g.,* 12 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 3006.1, 150–51 (3d ed., 2004).

that Calvin Howard would need to return to Touchstone Neurorecovery Center for 60 days," and "a 60-day stay would cost $60,000."[39] Calvin also points to his request for "reimbursement of travel expenses in connection with transportation to and from medical appointments, which amounts to $31,624.47."[40] Calvin contends these two figures are but two examples of amounts to which he is entitled under OLB's future cure obligation. For purposes of this analysis only, the Court will include these amounts, plus the additional expenses discussed below, in calculating the value of Calvin's cure award.

To calculate the value of Calvin's remaining cure expenses through April 30, 2017, the Court looks to the testimony of Calvin's life-care planner, Dr. Cornelius Gorman.[41] Dr. Gorman predicted that Calvin's "plan of care," for the remainder of his life, would cost approximately $12,073,868.75.[42] According to Dr. Gorman, Calvin's plan of care is broken down as follows:

| | |
|---|---|
| Facility Care | $11,337,517.50 |
| Financial Management | $427,500.00 |
| Future Medical Care Routine | $122,921.00 |
| Health and Strength Maintenance | $23,917.00 |
| Medications | $19,736.25 |
| Projected Evaluations | $14,585.00 |
| Projected Therapeutic Modalities | $127,692.00 |
| **Total** | **$12,073,868.75** |

---

[39] R. Doc. 886 at 9.
[40] R. Doc. 886 at 9.
[41] *See* R. Doc. 855 at 143.
[42] R. Doc. 803-2 at 6.

Because these figures represent the costs associated with Calvin's plan of care for the remainder of his life, the Court must determine which costs are expected to be incurred prior to April 30, 2017, the date on which the jury concluded that Calvin will reach MMI and the date on which OLB's cure obligation ends. The Court does so by examining each category of Dr. Gorman's life-care plan, the frequency and duration of each item of treatment recommended by Dr. Gorman, and the associated price per unit, ultimately arriving at the costs that would likely be incurred by Calvin prior to April 30, 2017. The Court's estimations are based on a span of two (2) years from the date of the Court's judgment until the date on which Calvin will reach MMI, which is longer than the actual time and, thus, is more favorable to Calvin.

### i. Facility Care

This category estimates the costs that would be incurred if Calvin were to return to Touchstone Neurorecovery Center, as recommended by Dr. Gorman. According to Calvin, the costs associated with his return to Touchstone would be approximately $60,000.00.[43] The Court will, for purposes of this analysis, assume that this $60,000.00 would be recoverable from OLB under its cure obligation.

### ii. Financial Management

Dr. Gorman recommends that Calvin obtain accountancy services to manage his financial interests. "Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman until the point of maximum cure."[44] Costs incurred to obtain accountancy services are not part of OLB's obligation to pay cure,

---

[43] R. Doc. 886 at 9.
[44] *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 476 (5th Cir. 2015) (citations omitted) (internal quotation marks omitted) (alterations omitted).

and the Court thus does not consider these costs in determining the value of Calvin's award of future cure.

### iii. Future Medical Care Routine

Dr. Gorman recommends Calvin obtain the following medical care in the future:

| Item/Service | Frequency | Cost Per Unit | Cost Over 2 Years (Cure) |
|---|---|---|---|
| Diagnostic Imaging | 1 time/3 years | $4,500.00 | $4,500.00 |
| EMG/NCV | 1 time only | $1,000.00 | $1,000.00 |
| Laboratory Testing | 1 time/year | $115.00 | $230.00 |
| MRI, Cervical Spine | 1 time only | $2,149.00 | $2,149.00 |
| MRI, Lumbar Spine | 1 time only | $2,247.00 | $2,247.00 |
| Internal Medicine | 1 time/year | $175.00 | $350.00 |
| Neurologist | 2 times/year | $200.00 | $800.00 |
| Pain Specialist | 4 times/year | $200.00 | $1,600.00 |
| **Total** | | | **$12,876.00** |

### iv. Health and Strength Maintenance

Assuming that these costs would be included as cure, Dr. Gorman's Health and Strength Maintenance category includes the following costs:

| Item/Service | Frequency | Cost Per Unit | Cost Over 2 Years (Cure) |
|---|---|---|---|
| Wellness Center Initial Fee | 1 time only | $100.00 | $100.00 |
| Wellness Center Monthly Fee | 1 time/month | $51.00 | $1,224.00 |
| **Total** | | | **$1,324.00** |

v. <u>Medications</u>

Dr. Gorman identifies the following costs associated with medications:

| Item/Service | Frequency | Cost Per Unit | Cost Over 2 Years (Cure) |
|---|---|---|---|
| Current Medications | 1 time/month | $41.55 | $997.20 |
| **Total** | | | **$997.20** |

vi. <u>Projected Evaluations</u>

The following projected evaluations are recommended:

| Item/Service | Frequency | Cost Per Unit | Cost Over 2 Years (Cure) |
|---|---|---|---|
| Internal Medicine Evaluation | 1 time only | $300.00 | $300.00 |
| Neurology Evaluation | 1 time only | $495.00 | $495.00 |
| Neuropsychological Testing | 1 time only | $1,500.00 | $1,500.00 |
| Occupational Therapy Evaluation | 1 time/year | $200.00 | $400.00 |
| Pain Specialist Evaluation | 1 time only | $350.00 | $350.00 |
| Physical Therapy Evaluation | 1 time only | $180.00 | $180.00 |
| Psychiatric Evaluation | 1 time only | $2,500.00 | $2,500.00 |
| Psychotherapy Evaluation | 1 time only | $260.00 | $260.00 |
| Speech Therapy Evaluation | 2 times only | $500.00 | $1,000.00 |
| **Total** | | | **$6,985.00** |

12

vii.   Projected Therapeutic Modalities

The following projected therapeutic modalities are recommended:

| Item/Service | Frequency | Cost Per Unit | Cost Over 2 Years (Cure) |
|---|---|---|---|
| Occupational Therapy | 1 time/year | $1,020.00 | $2,040.00 |
| Physical Therapy | 1 time/year | $960.00 | $1,920.00 |
| Speech Therapy | 1 time/year | $688.00 | $1,376.00 |
| Psychiatrist | 4 times/year | $180.00 | $1,440.00 |
| Psychiatrist (again) | 2 times/year | $180.00 | $720.00 |
| Psychotherapy | 1 time/week | $120.00 | $12,480.00 |
| Psychotherapy (again) | 2 times/month | $120.00 | $5,760.00 |
| **Total** | | | **$25,736.00** |

Based on the foregoing calculations, which are based on the various potential medical expenses listed in Dr. Gorman's life-care plan for Calvin Howard over the next two years, the Court finds, for purposes of this Rule 68 analysis only, that a reasonable estimate of the value of Calvin's future cure award is $139,542.67, as reflected below:

| Category | 2 year total: |
|---|---|
| Travel to and from appointments[45] | $31,624.47 |
| Facility Care | $60,000.00 |
| Financial Management | $0 |
| Future Medical Care Routine | $12,876.00 |

[45] The Court takes no position on whether these expenses are recoverable as cure but includes them here for purposes of argument.

| | |
|---|---|
| Health and Strength Maintenance | $1,324.00 |
| Medications | $997.20 |
| Projected Evaluations | $6,985.00 |
| Projected Therapeutic Modalities | $25,736.00 |
| **Total** | **$139,542.67** |

The jury awarded Calvin damages for future medical expenses in the amount of $50,000.00. OLB is entitled to an offset in that amount against Calvin's future cure award because the law does not permit double recovery. After deducting $50,000.00, a reasonable estimate of the value of Calvin's future cure award through April 30, 2017, is $89,542.67. This figure, when added to the damages awarded Calvin, 50% of his pre-offer costs, and Calvin's estimate of the value of his maintenance award, brings Calvin's total recovery in this matter to $780,155.15[46]:

| | |
|---|---|
| Damages | $652,420.00 |
| Pre-offer costs | $23,317.48 |
| Maintenance | $14,875.00 |
| Cure | $89,542.67 |
| **Total (with cure)** | **$780,155.15** |

At the end of the day, having awarded 50% of Calvin's estimated value of his pre-offer costs and his estimated value of his future maintenance award, and having been very generous in estimating the value of Calvin's future cure award, the Court finds that

---

[46] The Court notes that this figure is likely much larger than what Calvin will actually incur as cure prior to April 30, 2017, given the many benefits of the doubt the Court has afforded Calvin.

Calvin's final recovery was less than OLB's $875,000.00 offer of judgment. Therefore, although Calvin, as a prevailing party, may recover 50% of his pre-offer costs from OLB under Rule 54(d), Calvin must pay OLB's post-offer costs pursuant to Rule 68(d).

### b. Raymond Howard

Also on January 8, 2016, OLB made an offer of judgment to Raymond Howard in the amount of $500,000.00.[47] Similar to OLB's offer to Calvin, OLB's offer of judgment to Raymond stated, in part, that:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Offshore Liftboats offers to allow Raymond Howard to take judgment against it as to the claims asserted by Raymond Howard in the above captioned matter in the total sum of $500,000.00.

> This offer of judgment is intended to resolve all of Raymond Howard's claims in this action, including without limitation, any and all claims for compensatory damages, statutory damages, attorneys fees, litigation expenses, and costs of suit.

Like Calvin, Raymond did not accept OLB's offer of judgment. The jury returned a verdict awarding Raymond damages in the total amount of $820,000.00,[48] for which OLB was found to be 20% responsible.[49] The jury also found that, with respect to Raymond's claims for maintenance and cure under the General Maritime Law, Raymond would reach maximum medical improvement ("MMI") on September 30, 2016.[50] The jury's verdict became the judgment of the Court on March 23, 2016.[51]

OLB's 20% of Raymond's damages award, as reflected in the judgment, amounts to $164,000.00, which is clearly less than OLB's $500,000.00 offer of judgment to

---

[47] R. Doc. 875-9.

[48] R. Doc. 829 at 9 (Physical pain and suffering and loss of enjoyment of life in the past ($150,000); Physical pain and suffering and loss of enjoyment of life in the future ($25,000); Mental anguish in the past ($27,500); Mental anguish in the future ($300,000); Loss of earning capacity, including the value of fringe benefits, in the past ($290,000); Loss of earning capacity, including the value of fringe benefits, in the future ($15,000); and Medical expenses in the future ($12,500)).

[49] R. Doc. 829 at 7.

[50] R. Doc. 829 at 10.

[51] R. Doc. 854.

Raymond. As with Calvin, however, the Rule 68 analysis does not end here. The Court must add the other amounts to which Raymond is entitled, such as (1) Raymond's pre-offer of judgment costs, and (2) the future maintenance-and-cure to which Raymond is entitled until September 30, 2016, to determine whether the amount reflected in the judgment is less than the offer of judgment. Unlike Calvin, however, Raymond has not separated his costs into pre-offer and post-offer and has not provided a specific value for his future maintenance-and-cure award. For purposes of the present analysis, the Court will use the total amount of costs provided by Raymond and will calculate Raymond's maintenance award:

| | |
|---|---|
| <u>Damages</u> | $164,000.00 |
| <u>Pre-offer costs</u>[52] | $158,440.92 |
| <u>Maintenance</u> | $7,455.00 |
| **<u>Total</u> (without cure)** | **$329,895.92** |

As explained with respect to Calvin, the Court has wide discretion to award to the prevailing party the sum of its pre-offer costs or to award a percentage of the party's pre-offer costs.[53] The Fifth Circuit has stated, specifically, that "Rule 54(d) gives the district court the necessary discretion to tax costs against the party who should equitably bear them."[54] In this case, OLB was found to be only 20% at fault. Moreover, Raymond was only partially successful on his claims against OLB. For these reasons, the Court exercises its discretion and will make only a partial award of costs to Raymond, awarding him 50%

---

[52] As explained *infra*, the Court uses the total-cost figure alleged by Raymond, without respect to whether pre-offer of judgment or post-offer, for purposes of this analysis.

[53] *See, e.g., Weiser v. Horace Mann Ins. Co.*, No. 06-9080, 2009 WL 5194972, at *3 (E.D. La. May 15, 2009); *see also Breeland v. Hide-A-Way Lake, Inc.*, 585 F.2d 716, 722 (5th Cir. 1978) ("It is well established that the district court enjoys discretion in determining who shall bear the costs of litigation and how much of the costs shall be apportioned to a taxed party.").

[54] *Johnston*, 803 F.2d at 870–71. *See also Pacheco v. Mineta*, 448 F.3d 783, 793–94 (5th Cir. 2006).

of his pre-offer costs. For purposes of this analysis only, the Court will use 50% of Raymond's total costs, which is $79,220.46.

As noted above, the jury found that Raymond will reach MMI on September 30, 2016. The effect of the jury's MMI finding is that OLB is obligated, until September 30, 2016, to pay any cure expenses actually incurred by Raymond and to pay Raymond maintenance at the rate of $35.00 per day. With respect to maintenance, Raymond makes no representation of what the value of his maintenance award is.[55] Neither does OLB take a position on the value of Raymond's maintenance award. The Court has calculated a reasonable estimate of this award by multiplying the approved rate of maintenance, $35.00 per day, by 213 days—the number of days in between March 1, 2016, and September 30, 2016, the date on which the jury concluded Raymond would reach MMI.[56] This figure, which totals $7,455.00, is reflected in the chart above.

With respect to cure, Raymond is entitled to receive cure payments for medical expenses that he actually incurs prior to reaching MMI.[57] For present purposes, to determine whether the value of Raymond's final award is less than or exceeds OLB's Rule 68 offer of judgment, the Court will make a realistic assessment of the value of Raymond's future cure award.[58] To calculate the value of Raymond's cure expenses through September 30, 2016, the Court will also look to the testimony of Dr. Cornelius Gorman, who created a life-care plan for Raymond separate and apart from the life-care plan he prepared for Calvin.[59] Dr. Gorman predicted that Raymond's "plan of care," for the

---

[55] R. Doc. 886 at 7.
[56] R. Doc. 886 at 7.
[57] *See, e.g., Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) ("The duty to provide cure encompasses . . . the obligation to *reimburse* medical expenses actually incurred.") (emphasis added).
[58] *See, e.g.,* 12 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 3006.1, 150–51 (3d ed., 2004).
[59] *See* R. Doc. 855 at 143.

remainder of his life, would cost approximately $930,044.20.[60] According to Dr. Gorman,
Raymond's plan of care is broken down as follows:

| Durable Medical Items | $160.00 |
|---|---|
| Financial Management | $238,500.00 |
| Future Medical Care Routine | $178,603.50 |
| Health and Strength Maintenance | $27,030.00 |
| Home Care | $53,000.00 |
| Medications | $167,951.70 |
| Projected Evaluations | $28,259.00 |
| Projected Therapeutic Modalities | $236,540.00 |
| **Total** | **$930,044.20** |

As with Calvin, because these figures are the costs associated with Raymond's plan
of care for the remainder of his life, the Court must determine which costs are expected
to be incurred prior to September 30, 2016, the date on which the jury concluded that
Raymond will reach MMI and the date on which OLB's cure obligation ends. The Court
does so by examining each category of Dr. Gorman's life-care plan, the frequency and
duration of each item of treatment recommended by Dr. Gorman, and the associated price
per unit, ultimately arriving at the costs that would likely be incurred by Raymond prior
to September 30, 2016. The Court's estimations are based on a span of one (1) year from
the date of the Court's judgment until the date on which Raymond will reach MMI, which
is slightly longer than the actual time and, thus, is more favorable to Raymond.

---

[60] R. Doc. 803-2 at 6.

i. <u>Durable Medical Items</u>

This category includes only the one-time cost of a TENS unit in the amount of $160.00. The Court includes this cost, for purposes of argument, in its valuation of Raymond's future cure award.

ii. <u>Financial Management</u>

Dr. Gorman recommends that Raymond obtain accountancy services to manage his financial interests. "Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman until the point of maximum cure."[61] Costs incurred to obtain accountancy services are not part of OLB's obligation to pay cure, and the Court thus does not consider these costs in determining the value of Raymond's award of future cure.

iii. <u>Future Medical Care Routine</u>

In this category, Dr. Gorman recommends that Raymond obtain the following medical care in the future:

| <u>Item/Service</u> | <u>Frequency</u> | <u>Cost Per Unit</u> | <u>Cost Over 1 Year</u> (Cure) |
|---|---|---|---|
| <u>Diagnostic Imaging</u> | 1 time/4 years | $6,000.00 | $6,000.00 |
| <u>EMG/NCV</u> | 1 time only | $500.00 | $500.00 |
| <u>Laboratory Testing</u> | 1 time/year | $115.00 | $115.00 |
| <u>MRI, Brain</u> | 1 time only | $2,370.00 | $2,370.00 |
| <u>MRI, Cervical Spine</u> | 1 time only | $2,149.00 | $2,149.00 |
| <u>MRI, Lumbar Spine</u> | 1 time only | $2,247.00 | $2,247.00 |
| <u>Urine Drug Screening</u> | 1 time only | $212.50 | $212.50 |

---

[61] *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 476 (5th Cir. 2015) (citations omitted) (internal quotation marks omitted) (alterations omitted).

| Urine Drug Screening (again) | 4 times/year | $212.50 | $850.00 |
|---|---|---|---|
| Internal Medicine | 1 time/year | $175.00 | $175.00 |
| Neurologist | 2 times/year | $200.00 | $400.00 |
| Physical Medicine & Rehabilitation | 4 times/year | $200.00 | $800.00 |
| **Total** | | | **$15,818.50** |

### iv.   Health and Strength Maintenance

Assuming that these costs would be included as cure, Dr. Gorman's Health and Strength Maintenance category includes the following costs:

| Item/Service | Frequency | Cost Per Unit | Cost Over 1 Year (Cure) |
|---|---|---|---|
| Wellness Center Initial Fee | 1 time only | $100.00 | $100.00 |
| Wellness Center Monthly Fee | 1 time/month | $51.00 | $612.00 |
| **Total** | | | **$712.00** |

### v.   Home Care

Dr. Gorman identifies the following costs associated with home care:

| Item/Service | Frequency | Cost Per Unit | Cost Over 1 Year (Cure) |
|---|---|---|---|
| Home Management | 1 time/month | $100.00 | $1,200.00 |
| **Total** | | | **$1,200.00** |

### vi.   Medications

Dr. Gorman identifies the following costs associated with medications:

| Item/Service | Frequency | Cost Per Unit | Cost Over 1 Year (Cure) |
|---|---|---|---|
| Current Medications | 1 time/month | $316.89 | $3,802.68 |
| **Total** | | | **$3,802.68** |

      vii.   Projected Evaluations

The following projected evaluations are recommended:

| Item/Service | Frequency | Cost Per Unit | Cost Over 1 Year (Cure) |
|---|---|---|---|
| Durable Medical Equipment Evaluation | 1 time only | $144.00 | $144.00 |
| Family Therapy Evaluation | 1 time only | $260.00 | $260.00 |
| Internal Medicine Evaluation | 1 time only | $300.00 | $300.00 |
| Neurology Evaluation | 1 time only | $495.00 | $495.00 |
| Neuropsychological Testing | 1 time only | $1,500.00 | $1,500.00 |
| Occupational Therapy Evaluation | 1 time/year | $200.00 | $200.00 |
| Physical Medicine & Rehabilitation Evaluation | 1 time only | $1,500.00 | $1,500.00 |
| Physical Therapy Evaluation | 1 time/year | $180.00 | $180.00 |
| Psychological Evaluation | 1 time only | $260.00 | $260.00 |
| Sleep Medicine Specialist Evaluation | 1 time only | $350.00 | $350.00 |
| Speech/Cognitive Therapy Evaluation | 1 time/year | $300.00 | $300.00 |

| | | | |
|---|---|---|---|
| Spine Specialist Evaluation | 1 time only | $350.00 | $350.00 |
| Vocational Rehabilitation | 1 time only | $4,500.00 | $4,500.00 |
| **Total** | | | **$10,339.00** |

viii.   Projected Therapeutic Modalities

The following projected therapeutic modalities are recommended:

| Item/Service | Frequency | Cost Per Unit | Cost Over 1 Year (Cure) |
|---|---|---|---|
| Cervical Epidural Steroid Injections | 3 times only | $3,300.00 | $3,300.00 |
| Occupational Therapy | 1 time/year | $2,040.00 | $2,040.00 |
| Physical Therapy | 1 time/year | $1,940.00 | $1,940.00 |
| Lumbar Epidural Steroid Injections | 3 times only | $2,500.00 | $2,500.00 |
| Speech/Cognitive Therapy | 1 time/year | $688.00 | $688.00 |
| Psychotherapy | 1 time/week | $120.00 | $6,240.00 |
| Psychotherapy (again) | 1 time/month | $120.00 | $1,440.00 |
| Psychotherapy (again) | 4 times/year | $120.00 | $480.00 |
| Psychotherapy (again) | 2 times/year | $120.00 | $240.00 |
| Psychiatrist | 4 times/year | $180.00 | $720.00 |
| Psychiatrist (again) | 2 times/year | $180.00 | $360.00 |
| **Total** | | | **$19,948.00** |

Based on the foregoing calculations, which are based on the various potential medical expenses listed Dr. Gorman's life-care plan for Raymond Howard, the Court

finds, for purposes of this Rule 68 analysis only, that a reasonable estimate of the value of the Raymond's future cure award is $51,980.18 through September 30, 2016, as reflected in the chart below:

| Category | 1 year total: |
|---|---|
| Durable Medical Items | $160.00 |
| Financial Management | $0 |
| Future Medical Care Routine | $15,818.50 |
| Health and Strength Maintenance | $712.00 |
| Home Care | $1,200.00 |
| Medications | $3,802.68 |
| Projected Evaluations | $10,339.00 |
| Projected Therapeutic Modalities | $19,948.00 |
| Total | $51,980.18 |

The jury awarded Raymond damages for future medical expenses in the amount of $12,500.00, and OLB is entitled to an offset in that amount against Raymond's future cure award because the law does not permit double recovery. After deducting $12,500.00, a reasonable estimate of the value of Raymond's future cure award is $39,480.18 through September 30, 2016. This figure, when added to the damages awarded Raymond, 50% of his "pre-offer costs," and the Court's estimate of the value of Raymond's maintenance award, brings Raymond's total recovery in this matter to $290,155.64[62]:

---

[62] The Court notes, moreover, that this figure is likely much larger than what Raymond will actually incur as cure prior to September 30, 2016, given the many benefits of the doubt the Court has afforded Raymond.

| Damages | $164,000.00 |
|---|---|
| Pre-offer costs[63] | $79,220.46 |
| Cure | $39,480.18 |
| Maintenance | $7,455.00 |
| **Total (with cure)** | **$290,155.64** |

At the end of the day, having estimated the value of Raymond's pre-offer costs and future maintenance award, and having been very generous in estimating the value of Raymond's future cure award, the Court finds that Raymond's final recovery was less than OLB's $500,000.00 offer of judgment. Therefore, although Raymond, as a prevailing party, may recover his pre-offer costs from OLB under Rule 54(d), Raymond must pay OLB's post-offer costs pursuant to Rule 68(d).

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motions to tax costs[64] considered by the Court herein are **GRANTED IN PART**. Plaintiffs Raymond Howard and Calvin Howard are the prevailing parties in this action and, as a result, are entitled to recover from OLB 50% of their pre-offer costs under Rule 54(d). Pursuant to Rule 68(d), OLB is entitled to recover its post-offer costs from Plaintiffs.

**IT IS FURTHER ORDERED** that this matter is referred to the office of the Clerk of Court for the taxation of costs in accordance with this ruling.

**New Orleans, Louisiana, this 24th day of June, 2016.**

_Susie Morgan_
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[63] As explained *infra*, the Court uses the total-cost figure alleged by Raymond, without respect to whether pre-offer of judgment or post-offer, for purposes of this analysis.
[64] R. Docs. 875, 877, 878.

24