## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CALVIN HOWARD, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                   **NO.  13-4811**
                                             **c/w 13-6407 and 14-1188**

**OFFSHORE LIFTBOATS, LLC,**
**ET AL.**                                   **SECTION "E" (5)**

## ORDER AND REASONS

Before the Court is a renewed post-trial motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and, in the alternative, a motion for new trial under Rule 59(a).[1] The motion was filed jointly by Plaintiffs Calvin Howard and Raymond Howard. Defendant, Offshore Liftboats, LLC, opposes the motion.[2] For the reasons that follow, the motion is **DENIED**.

## BACKGROUND

The matter of *Calvin Howard, et al. v. Offshore Liftboats, LLC, et al.* proceeded to a jury trial on January 25, 2016. The trial involved the claims of Plaintiffs Calvin Howard and Raymond Howard against their employer, Offshore Liftboats, LLC ("OLB"); K&K Offshore, LLC ("K&K"); and the insurers of both entities.[3] The claims asserted by the Plaintiffs were for various personal injuries, including alleged traumatic brain injuries, which the Plaintiffs claim they sustained during a failed personnel-basket transfer in the offshore waters of the Gulf of Mexico on May 16, 2013.[4] Plaintiffs brought claims against OLB, their employer, for: (1) Jones Act negligence; (2) the unseaworthiness of OLB's vessel, the L/B Janie, under the General Maritime Law; and (3) maintenance and cure.[5]

---

[1] R. Doc. 871.
[2] R. Doc. 889.
[3] R. Doc. 757 at 6–7 (Pretrial Order).
[4] *See generally* R. Doc. 757 at 5–8, 15–22 (Pretrial Order).
[5] *See* R. Doc. 218 (Second Amended & Supplemental Complaint).

Plaintiffs initially brought claims against K&K, a non-employer third party, for negligence and unseaworthiness under the General Maritime Law.[6] Plaintiffs' claims that K&K's vessel, the M/V Contender, was unseaworthy were dismissed prior to trial.[7] Plaintiffs settled their remaining claims with K&K after trial commenced but prior to the submission of the case to the jury for decision.

The trial lasted approximately four (4) weeks, concluding on February 19, 2016, when the jury returned its verdict. The jury concluded that both OLB and K&K were negligent and that their negligence played parts, however slight, in causing Plaintiffs' injuries.[8] With respect to Plaintiffs' unseaworthiness claims against OLB, the jury found that OLB's vessel, the L/B Janie, was not unseaworthy under the General Maritime Law.[9] The jury also found that neither Raymond Howard nor Calvin Howard was negligent. In allocating fault between OLB and K&K, the jury found OLB to be 20% at fault for the accident and K&K to be 80% at fault.[10]

## LAW AND ANALYSIS

I.  Rule 50(b); Renewed Motion for Judgment as a Matter of Law[11]

   a. *Legal Standard*

A Rule 50(b) motion for judgment as a matter of law "is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[12] Such a motion may be granted

---

[6] R. Doc. 218 (Second Amended & Supplemental Complaint).

[7] R. Doc. 705 at 2.

[8] R. Doc. 829 at 2–3 (Jury Verdict).

[9] R. Doc. 829 at 6 (Jury Verdict).

[10] R. Doc. 829 (Jury Verdict).

[11] A Rule 50(b) renewed motion for judgment as a matter of law "may be urged after the trial has been completed only if a similar motion was made at the close of the trial record and before a verdict was rendered." *See, e.g., Roman v. Western Mfg., Inc.*, No. 6:07-cv-1516, 2010 WL 5092977, at *1 (W.D. La. Nov. 29, 2010). Plaintiffs moved for judgment as a matter of law under Rule 50(a) on their negligence and unseaworthiness claims at the conclusion of their case-in-chief. *See* R. Doc. 814. Plaintiffs renewed this motion at the close of evidence. R. Doc. 825. Because Plaintiffs preserved their Rule 50 arguments, Plaintiffs' renewed motion for judgment as a matter of law under Rule 50(b) is procedurally proper.

[12] *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (citations omitted).

only if the trial court finds that "there is no legally sufficient basis for a reasonable jury to have found for that party with respect to that issue."[13] Stated differently, the Fifth Circuit has held that granting judgment as a matter of law is proper only when "the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[14] In analyzing a Rule 50(b) motion, the court "consider[s] all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."[15] A court must be especially deferential to a jury's verdict,[16] upsetting the verdict only when it is not supported by a legally sufficient evidentiary basis.[17]

### b.  *Unseaworthiness of the L/B Janie*

The Court notes first that whether the jury found the L/B Janie to be seaworthy or not is moot. The jury found that OLB was negligent under the Jones Act, that the L/B Janie was seaworthy, and that Plaintiffs were not contributorily negligent. Under these circumstances, a jury finding of unseaworthiness would have made no difference in the damages recovered by the Plaintiffs.[18] Putting this fact aside, although with great reluctance, the Court will consider the Plaintiffs' motion.

As stated above, the jury concluded that OLB's vessel, the L/B JANIE, was a seaworthy vessel. Plaintiffs contend, however, that "[t]he evidence presented at trial

---

[13] *Id.* (citations and internal quotation marks omitted).

[14] *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012) (quoting *Flowers*, 247 F.3d 229).

[15] *Flowers*, 247 F.3d at 235.

[16] *Baisden*, 693 F.3d at 499.

[17] *In re Actos (Pioglitazone) Products Liability Litigation*, No. 6:12-cv-00064-RFD-PJH, 2014 WL 4364832, *3 (W.D. La. Sept. 2, 2014) (citing *Roman v. Western Mfg.*, 691 F.3d 686, 692 (5th Cir. 2012)). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[18] The closest the Plaintiffs came to showing that this issue is not moot is their argument that the Court should have required the jury to assign contributory negligence to the Defendants in the Jones Act context and then, separately, in the unseaworthiness context. As explained below, the Fifth Circuit does not prohibit the use of a general verdict form when the damages stem from a single event Jones Act and unseaworthiness claims are tried together. *See* footnote 43, *infra*. Because the Court did not, and was not required to, instruct the jury to find contributory negligence separately in these two contexts, this argument fails.

3

undeniably showed that the attempted ingress by means of the crane lift of Raymond and Calvin Howard from the M/V CONTENDER to the L/B JANIE was an unsafe lift."[19] Moreover, according to Plaintiffs, the jury's verdict "finding OLB negligent undoubtedly leads to the conclusion that the L/B JANIE was unseaworthy as a matter of law as it is clear the jury found the crew of the L/B JANIE played a role in failing to provide Raymond and Calvin with a safe means of transport to its vessel."[20] Plaintiffs argue that, in light of the evidence presented at trial and the jury's conclusion that OLB was negligent, the jury's conclusion that the L/B Janie was seaworthy is contrary to the law.

Plaintiffs contend the evidence presented at trial provided a sufficient evidentiary basis for a reasonable person to conclude that the L/B Janie was unseaworthy. The Plaintiffs have misstated the standard to be applied in analyzing a Rule 50(b) motion. On a motion for judgment as a matter of law following trial, the movant must show that, after consideration of the evidence presented at the trial and the arguments of Plaintiffs, and drawing all reasonable inferences and resolving all credibility determinations in favor of OLB, no reasonable jury could have reached the verdict rendered.[21] In other words, the Plaintiffs must show that no reasonable jury could have found that the L/B Janie was seaworthy. The fact that a reasonable jury might also have found the L/B Janie to be unseaworthy is irrelevant to the success of the Plaintiffs' motion for judgment as a matter of law. Courts must be especially deferential to jury verdicts and may reverse a jury only when the verdict is not supported by legally sufficient evidence. That is not the case here.

In their supplemental memorandum in support of their motion for judgment as a matter of law,[22] the Plaintiffs added a new ground for their Rule 59(b) motion based on

---

[19] R. Doc. 871-1 at 4.
[20] R. Doc. 871-1 at 4.
[21] FED. R. CIV. P. 50(b). *See also Baisden*, 693 F.3d at 498; *Flowers*, 247 F.3d 235.
[22] R. Doc. 881 at 4.

the Court's failure to properly instruct the jury. Plaintiffs argue that the Court's failure to include an instruction that the duty to provide a seaworthy vessel includes the duty to provide safe ingress and egress for crewmembers was error. This argument is untimely as it was not presented within 28 days of the entry of the judgment. Even if not waived, the Court finds that the argument lacks merit. If a vessel has a safe, appropriate means of ingress and egress, then ingress and egress is a negligence concept. If the vessel owner's employees are negligent in carrying out the ingress and egress using the mode provided, the vessel owner is liable for its employees' negligence.[23] Only if a vessel fails to provide a safe, appropriate means of ingress and egress is ingress and egress an unseaworthiness concept.[24]

The jury was instructed on Plaintiffs' claims against OLB for (1) negligence under the Jones Act and (2) unseaworthiness of the L/B Janie under the General Maritime Law, including the duty to supply an adequate, competent, and properly trained crew.[25] The Plaintiffs admit the only negligence of OLB was the negligence of its crew.[26] The Plaintiffs are correct that the duty to provide a seaworthy vessel encompasses affording the seaman a reasonably safe means of boarding and departing from the vessel.[27] But the cases cited by the Plaintiffs involve situations where the employer failed altogether to provide a reasonably safe means of ingress and egress. For example, in *Superior Oil*, the "transfer from one vessel to the other was by the simple expedient of waiting for the vessels to swing together and stepping or jumping from one to the other when the decks reached a level or

---

[23] *See, e.g., Cormier v. Rowan Drilling*, 549 F.2d 963, 971 (5th Cir. 1977); *Arceneaux v. Ingram Barge Co.*, No. 94-2505, 1995 WL 527635 (E.D. La. Sept. 5, 1995).

[24] *Hebert v. Otto Candies, Inc.*, 402 F. Supp. 503, 506 (E.D. La. 1975) (citing *Superior Oil Co. v. Trahan*, 322 F.2d 234 (5th Cir. 1963)).

[25] R. Doc. 831 at 11–20.

[26] *See* R. Doc. 871-1 at 4.

[27] *Superior Oil Co. v. Trahan*, 322 F.2d 234 (5th Cir. 1963).

near level position."[28] The Fifth Circuit in *Superior Oil* found that the vessel owner failed to provide a reasonably safe means of ingress and egress.[29]  There was no evidence presented at the trial of this case that there was not a reasonably safe method of ingress and egress to the L/B Janie—clearly there was in the form of the crane and personnel basket.  Plaintiffs did not present evidence that using a crane and personnel basket is so unsafe as to amount to the failure to provide a reasonably safe method of ingress and egress—clearly this method is an accepted means of transfer which is routinely used in the Gulf of Mexico. Instead, Plaintiffs presented evidence that the operation of the crane and personnel basket by K&K and OLB employees did not meet the standard of care required—clearly a negligence claim.  The Court properly instructed the jury on Jones Act negligence that "[a] Jones Act employer has a duty to provide its employees safe ingress to and from its vessels."[30]

The only issue with respect to the transfer on which the Plaintiffs arguably introduced evidence is whether the L/B Janie was unseaworthy because OLB failed to provide an adequate, competent, and properly trained crew. The Court properly instructed the jury on unseaworthiness, stating that "[t]he duty to provide a seaworthy vessel includes a duty to supply an adequate, competent, and properly trained crew."[31] If the jury had come to the conclusion that the crew of the L/B Janie was not adequate, competent, or properly trained, it would have answered Question No. 5A of the Jury Verdict form "yes," and then proceeded to Question No. 5B for a determination of whether this unseaworthy condition was the proximate cause of the injuries.[32] The jury did not

---

[28] *Superior Oil*, 322 F.2d at 235.
[29] *Id.* at 235–36.
[30] R. Doc. 831 at 12.
[31] R. Doc. 831 at 17.
[32] R. Doc. 829 at 6.

find the L/B Janie to be unseaworthy because of an inadequate crew. Legally sufficient evidence was presented to support this determination.

Plaintiffs' argument that the jury's finding OLB negligent undoubtedly leads to the conclusion that the L/B JANIE was unseaworthy as a matter of law also fails. It is a fundamental concept of maritime law that negligence under the Jones Act and unseaworthiness under the General Maritime Law are separate causes of action, each with its own burden of proof.[33] It is not inconsistent for a jury to find Jones Act negligence, but not unseaworthiness under the General Maritime Law.[34] The Court instructed the jury, without objection from the Plaintiffs, on each cause of action and its burden of proof and told the jury to consider each claim separately.[35]

The Court will not upset the jury's verdict as to the seaworthiness of the L/B Janie. The Plaintiffs' request for judgment as a matter of law is denied.

II.    Rule 59(a); Motion for New Trial

   a.  *Legal Standard*

A motion for new trial under Rule 59(a) is an extraordinary remedy that should be used sparingly.[36] Rule 59(a) provides, specifically, that the district court may grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."[37] Although Rule 59(a) does not delineate the precise grounds for granting a new trial, the Fifth Circuit has held that Rule 59(a) allows the district court to grant a new trial if it "finds the verdict is against the weight of the evidence, the damages

---

[33] *See, e.g., Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988) (citing *Comeaux v. T.L. James & Co., Inc.*, 702 F.2d 1023, 1024 (5th Cir. 1983)) ("We stress again that Jones Act negligence and unseaworthiness under general maritime law are two distinct causes of action, each involving separate standards of proof, causation, and review.").

[34] *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 298–99 (5th Cir. 1986).

[35] *See* R. Doc. 831 at 10, 11–20.

[36] *Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000) (citing *Avondale Indus., Inc. v. Bd. of Comm'rs of the Port of New Orleans*, No. 94-2786, 1996 WL 413645, at *2 (E.D. La. July 24, 1996)).

[37] FED. R. CIV. P. 59(a). *See Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[38] Still, the decision whether to grant a new trial under Rule 59(a) is left to the sound discretion of the trial judge, and the court's authority is broad.[39]

### b.  *Unseaworthiness of the L/B Janie*

If the Court does not grant Plaintiffs' Rule 50(b) motion for judgment as a matter of law finding the L/B JANIE unseaworthy as a matter of law, Plaintiffs seek a new trial on that issue under Rule 59(a). Plaintiffs make the same arguments in support of their motion for new trial as they do in support of their motion for judgment as a matter of law, and the Court does not repeat them here.

The Court has dealt with this issue above. As no prejudicial error was committed, this issue does not provide a basis for granting a new trial.

### c.  *Question No. 6 on the Jury Verdict Form*

Question No. 6 on the jury verdict form asked: "What percentage of the negligence and/or unseaworthiness that caused the incident do you attribute to each entity or individual listed below?"[40] The question then guided the jury through the process of allocating a percentage of fault to K&K, OLB, Calvin Howard, and Raymond Howard. The jury allocated 80% of the fault to K&K and the remaining 20% to OLB, attributing no fault to Calvin and Raymond.

According to Plaintiffs, Question No. 6 was deficient because it "did not ask the jury to separate [the] percentage of fault resulting from negligence as opposed to fault

---

[38] *See Smith*, 773, F.2d at 613 (citing *Reed Bros., Inc. v. Monsato Co.*, 525 F.2d 486, 499–50 (8th Cir. 1975)).
[39] *In re Omega Protein, Inc.*, No. 04 CV 02071, 2007 WL 1974309, at *2 (W.D. La. July 2, 2007). *See also Thomas v. Concerned Care Home Health, Inc.*, No. 13-5912, 2016 WL 930943, at *2 (E.D. La. Mar. 11, 2016).
[40] R. Doc. 829 at 7.

resulting from unseaworthiness."[41] For that reason, Plaintiffs maintain "it was legal error for such Question to be given to the jury."[42]

This objection is moot. The jury did not find that the Plaintiffs were contributorily negligent, nor did the jury find that the L/B Janie was unseaworthy. As a result, the percentages of fault assigned by the jury in Question No. 6 of the Jury Verdict form could only have referred to the negligence of K&K under the general maritime law and the negligence of OLB under the Jones Act.

Even if this issue were not moot, Question No. 6 was not in error. The Fifth Circuit does not prohibit the use of a general verdict form when the damages stem from a single event and the Jones Act and unseaworthiness claims are tried together.[43]

As no prejudicial error was committed, this issue does not provide a basis for granting a new trial.

### d. *Apportionment of Fault*

Related to their argument that Question No. 6 on the jury verdict form was legal error because it did not ask the jury to allocate fault separately for negligence and unseaworthiness, Plaintiffs argue that "[i]ntertwining 'negligence' with 'unseaworthiness' certainly affected the jury's ability to understand how to adequately apportion fault to each defendant."[44] Plaintiffs further argue that this "likely caused the jury to erroneously apportion 80% fault to K&K and only 20% fault to OLB."[45]

The Plaintiffs argue that the apportionment of 80% fault to K&K and 20% fault to OLB is against the weight of the evidence and justifies a new trial. The jury heard evidence

---

[41] R. Doc. 871-1 at 13.
[42] R. Doc. 871-1 at 13.
[43] *Comeaux*, 702 F.2d at 1025; *Fontenot v. Teledyne Movible Offshore, Inc.*, 714 F.2d 17, 19 (5th Cir. 1983); *Washington v. Dolphin Titan Intern., Inc.*, No. 89-3848, 1991 WL 161491, at *3 (E.D. La. Aug. 14, 1991).
[44] R. Doc. 871-1 at 14.
[45] R. Doc. 871-1 at 14.

of K&K's fault, such as its deckhand testing positive for marijuana,[46] its safety manager testifying that it was an oversight on his part for him to have hired this deckhand,[47] the captain's testimony that despite his claim that he was not ready for the personnel basket transfer to occur he took no steps to call an all stop or otherwise prevent the transfer from going forward.[48] The jury also heard testimony from OLB employees that the K&K vessel moved forward causing the basket to hang up on the jump deck handrail and that it continued moving forward until the basket came free. Sylvester Richardson testified that the Contender "took off" and "lunged forward."[49] He saw wheel wash indicating the vessel was moving forward.[50] Rick Simoneaux also saw the wheel wash.[51] The jury also heard testimony from Plaintiffs' expert that if the crane boom remains stationary, the only thing that could take the basket out of alignment and cause it to swing is movement of the vessel and that any such swinging movement to the stern would be caused by the vessel moving forward.[52] OLB's experts Robert Watson and Captain Gregory Daley also testified extensively as to how this accident occurred and gave their opinion that it was the movement of the vessel, not any action of the crane operator, which caused the basket to hand up on the jump deck handrail.[53]

    As Question No. 6 was not in error, and the jury's verdict was supported by the evidence, this issue does not provide a basis for granting a new trial.

---

[46] R. Doc. 868 at 10, 78–79 (Trial Transcript, 1/27/16).
[47] R. Doc. 789 at 18 (Deposition of Greg Lasseigne).
[48] R. Doc. 788 at 22–23, 32, 34, 45–46 (Deposition of James Godwin).
[49] R. Doc. 867 at 165 (Trial Transcript, 1/26/16).
[50] R. Doc. 867 at 198 (Trial Transcript, 1/26/16).
[51] R. Doc. 867 at 213 (Trial Transcript, 1/26/16).
[52] R. Doc. 869 at 62–63 (Trial Transcript, 1/28/16).
[53] R. Doc. 836 at 335 (Trial Transcript, 2/11/16); R. Doc. 858 at 68 (Trial Transcript, 2/16/16).

e.  *Testimony of Defense Expert Witnesses*

Plaintiffs contend "[a]nother major issue worthy of re-litigating occurred over Plaintiff counsels' objections, where both defense liability experts, Mr. Watson and Captain Gregory Daley, were permitted by the Court to testify as to liability theories outside their expert reports and deposition testimony with no notice to Plaintiffs' counsel."[54] Plaintiffs specifically contend that both Watson and Daley "changed their theories of allocation of liability as well as theories of liability expressed in their reports and their deposition testimony, which had been presented during the course of plaintiffs' case in chief."[55] Plaintiffs maintain this prejudiced them and violated the Federal Rules of Civil Procedure, and as a result they should be granted a new trial.[56]

Plaintiffs improperly attached these expert witnesses' reports and entire depositions, which are not in evidence,[57] to their motion, presumably to support their contention that the witnesses changed their testimony. The Plaintiffs fail to cite to any instances actually in the record showing that Mr. Watson and Captain Daley were permitted to testify outside of their expert reports and depositions, or that they suffered prejudice thereby. The Plaintiffs had the full opportunity to cross-examine these witnesses at trial and to impeach them with their reports and deposition testimony. The jury heard their testimony on direct and on cross-examination, including any impeachment.

No error was committed and the Plaintiffs' objection does not provide a basis for granting a new trial.

---

[54] R. Doc. 871-1 at 14.
[55] R. Doc. 871-1 at 15.
[56] R. Doc. 871-1 at 15.
[57] Certain excerpts of the depositions used for impeachment are in the record and were considered by the jury. *E.g.*, Trial Exhibits 275 and 279.

f.   *Damages Awarded to Plaintiffs*

This subsection of the motion refers to the plural "plaintiffs" in the heading, but the arguments made thereunder are specific to Raymond Howard.[58] Raymond contends "[t]he jury's award of damages . . . makes no sense of proportion based on its awards for past and future damages, nor is it supported by any evidence presented at the trial."[59] In principle, Raymond takes issue with the jury's award of $290,000.00 for past loss of earning capacity but only $15,000.00 for the same category in the future.[60] Raymond also argues that the jury's award of $25,000.00 for physical pain and suffering in the future is woefully inadequate as "no physician testified that [he] would be painless in the future, nor did any defense physician or expert dispute the testimony of [his] treating physicians that he has and will have pain for the rest of his life."[61] Raymond points to his award of $300,000.00 for mental anguish in the future as proof that the jury believed "the accident was a cause of substantial future mental suffering," arguing that it is impossible to distinguish from the physical pain and suffering from which Raymond suffers and will continue to suffer.[62]

"It is the function of the factfinder to assess fault and award damages, and within the range of reasonable awards there is considerable leeway."[63] A jury has broad discretion in determining and awarding loss of wages and fringe benefits damages in personal injury actions.[64] The damage award in this case is within a reasonable range and is supported by the evidence and does not serve as the basis for the grant of a new trial.

---

[58] R. Doc. 871-1 at 15.
[59] R. Doc. 871-1 at 15.
[60] R. Doc. 871-1 at 15.
[61] R. Doc. 871-1 at 15–16.
[62] R. Doc. 871-1 at 16.
[63] *Dopson v. Wilrig (U.S.A.), Inc.*, No. 92-4091, 1994 WL 10362, at *1 (E.D. La. Jan. 6, 1994).
[64] *Facille v. Madere & Sons Towing, LLC*, No. 13-6470, 2015 WL 5017012, at *5 (E.D. La. Aug. 21, 2015).

### g. *Leading Questions*

Plaintiffs argue the Court erred in ruling that "OLB's current and former employees were not adverse witnesses, which prevented Plaintiffs' counsel from asking leading questions when Plaintiffs called these witnesses during their case-in-chief."[65] Plaintiffs state that, "[o]n the morning Plaintiffs were set to call their first witness—former OLB employee Sylvester Richardson—the Court ruled that Plaintiffs could not ask Mr. Richardson leading questions." Plaintiffs contend the timing of this ruling "prejudiced [their] ability to prepare for the examination of Mr. Richardson, as it was made the same day Mr. Richardson was called to testify."[66] Plaintiffs also argue that the Court "extended this ruling to Plaintiffs' examination of former OLB employee Rick Simoneaux, and the results were equally prejudicial."[67]

Federal Rule of Evidence 611(c) does not give an absolute right to ask leading questions, as the district court has the discretion to allow or disallow leading questions of a witness identified with an adverse party, and once the district court exercises its discretion in that regard, the movant must establish an abuse of discretion to obtain a reversal."[68]

Richardson and Simoneaux were not hostile to the Plaintiffs during their testimony.  Both were open and cooperative during their testimony. Plaintiffs cite to no specific instances in which Richardson or Simoneaux were hostile to the Plaintiffs during their trial testimony because none occurred.

---

[65] R. Doc. 871-1 at 16.
[66] R. Doc. 871-1 at 16.
[67] R. Doc. 871-1 at 17.
[68] *Jaffe v. Bank of America, N.A.*, 395 F. App'x 583, 588 (11th Cir. 2010) (citing FED. R. EVID. 611(a), (c); *United States v. Hall*, 165 F.3d 1095, 1117 (7th Cir. 1999)). *See also Scenic Holding, LLC v. New Bd. of Trustees of Tabernacle Missionary Baptist Church*, 506 F.3d 656, 664 (8th Cir. 2007) ("[R]ule 611(c) is permissive and must be read in context with the trial court's general authority and discretion to control the conduct of the trial.").

Plaintiffs have failed to show that the Court abused its discretion. No error was committed and this issue does not provide a basis for a new trial.

### h. *OLB Employees' Interviews with Coast Guard*

According to Plaintiffs, "[i]t was error for the Court to rule that Plaintiffs could not admit or use witness statements that OLB's crewmembers gave to the United States Coast Guard."[69] In their motion for new trial, Plaintiffs cite Federal Rule of Evidence 801(d)(2)(D), arguing that the statements should have been admitted as exceptions to the hearsay rule as the statement of a party's agent or servant concerning a manner within the scope of the agency or employment, made during the existence of the relationship.[70]

Prior to trial, the parties objected to approximately 174 exhibits, making it impossible for the Court to rule on all objections prior to the start of trial. Among those objections not ruled on prior to the start of trial were OLB's objections to Exhibits 150, 153, 155, 157, and 160, the statements OLB crewmembers gave to the United States Coast Guard, on the basis of hearsay.[71] In response to OLB's pre-trial objections, Plaintiffs advanced the argument that the Coast Guard statements were not hearsay because the statements qualify as party-opponent admissions under Federal Rule of Evidence 801(d)(2)(D).[72]

On the second day of trial, Plaintiffs notified the Court that they wished to use the Coast Guard statements. At that time, the Plaintiffs advanced their new argument that the statements were admissible to impeach the witnesses who gave them under Rule

---

[69] R. Doc. 871-1 at 17. The Court notes that the Plaintiffs were allowed to use the statements but were not allowed to introduce them into evidence.
[70] FED. R. EVID. 801(d)(2)(D).
[71] *See* R. Doc. 600 at 6.
[72] R. Doc. 677 at 6.

801(d)(1)(A).[73] When discussing the Coast Guard statement of Rick Simoneaux and its admissibility, Ryan Zehl, counsel for Plaintiff Calvin Howard, specifically stated: "We can't introduce it, Judge. I would say we can't introduce it as substantive evidence, but we can use it for impeachment purposes as the rule would allow."[74]

To use a prior statement for the purpose of impeachment under Rule 801(d)(1)(A), the statement must have been given "under the penalty of perjury at a trial, hearing, or other proceeding or in a deposition." The Court ruled that the Coast Guard statements could not be introduced into evidence, as the statements were not sworn and, thus, were not given under the penalty of perjury.[75] Furthermore, the Court expressed its concern with the reliability of the information included in the Coast Guard statements, because they were not sworn statements signed by the witnesses, and found the exhibits inadmissible under Federal Rule of Evidence 403 .[76] The Court informed the Plaintiffs that they would be permitted to use the statements for impeachment, but not introduce them into evidence, if a witness testified inconsistent with his own statement.[77] The Plaintiffs understood and took advantage of the Court's ruling, as they did question at least one witness regarding his Coast Guard statement. Specifically, while examining Rick Simoneaux, Plaintiffs' counsel referred the witness to his Coast Guard statement.[78]  At that point, Plaintiffs' counsel elected to use the statement only to refresh Simoneaux's

---

[73] *See* R. Doc. 867 at 124–25 (Trial Transcript, 1/26/16). The Court notes that, at trial, Plaintiffs did not attempt to establish at trial that the Coast Guard statements satisfied the requirements of Rule 801(d)(2)(D).

[74] R. Doc. 867 at 125 (Trial Transcript, 1/26/16).

[75] R. Doc. 867 at 124–25 (Trial Transcript, 1/26/16).

[76] *See* R. Doc. 867 at 125 (Trial Transcript, 1/26/16).

[77] *See* R. Doc. 867 at 127 (Trial Transcript, 1/26/16).

[78] The first reference to Simoneaux's Coast Guard statement is found on page 208 of Record Document 867. There, counsel referred to the statement, which received an objection from defense counsel on the basis that the witness had not yet testified inconsistent with the statement. A discussion over whether the statement could be used to refresh Simoneaux's recollection at that time, but counsel opted to move on without doing so.

recollection.[79] Statements used only to refresh a witness's recollection are not admissible into evidence.[80]

Plaintiffs' argument that the Court erred in not permitting the Coast Guard statements to be introduced into evidence is without merit. In their motion for new trial, Plaintiffs fail even to address the Court's ruling at trial excluding the evidence under Federal Rules of Evidence 403 and 801(d)(1)(A). It is clear that Code of Evidence Article 801(d)(1)(A) requires that a witness's prior inconsistent statement must be given under penalty of perjury. Exclusion of evidence under Rule 403 is committed to the discretion of the trial court.

Evidentiary objections are reviewed for abuse of discretion,[81] and will be disturbed only if they affect the substantial rights of the parties.[82] The discretion to exclude evidence under Rule 403 has been described as broad[83] and vast.[84] In this case all of the witnesses who gave statements to the Coast Guard, except Jose Fernandez who was available but Plaintiffs chose not to call, testified live at trial. Plaintiffs were allowed to use the statements to impeach the witnesses, where appropriate. Plaintiffs suffered no prejudice as they result of the Court's ruling that the Coast Guard statement would not be admitted into evidence.

The Court notes also that Plaintiffs did not make a proffer of the Coast Guard statements. In such a circumstance, the appellate court "will not even consider the

---

[79] R. Doc. 867 at 214–16 (Trial Transcript, 1/26/16).
[80] FED. R. EVID. 612. *See also Jordan v. ENSCO Offshore Co.*, No. 15-1226, 2016 WL 2822586, at *2 (E.D. La. May 13, 2016).
[81] *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 355 (5th Cir. 2010).
[82] *Stover v. Hattiesburg Public School Dist.*, 549 F.3d 985, 992 (5th Cir. 2008).
[83] *United States v. Tidwell*, 559 F.2d 262, 267 (5th Cir. 1977); *French v. Allstate Indem. Co.*, 637 F.3d 571, 578 (5th Cir. 2011) (quoting *United States v. Allard*, 464 F.3d 529, 534 (5th Cir. 2006)).
[84] *Williams v. Louisiana*, No. 14-00154-BAJ-RLB, 2016 WL 754629, at *2 (M.D. La. Feb. 24, 2016).

propriety of the decision to exclude the evidence at issue, if no offer of proof was made at the trial."[85]

As the Court did not commit error and did not abuse its discretion, this issue does not provide a basis for granting a new trial.

### i. *Procedure Regarding Admission Into Evidence of Trial Exhibits*

Plaintiffs also contend "it was error for the Court to require Plaintiffs to orally discuss exhibits with live witnesses before the exhibit could be admitted into evidence."[86] In support, Plaintiffs cite Federal Rule of Evidence 402, which states that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution, a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible."[87] Plaintiffs argue "the Court's requirement that the parties orally discuss exhibits with live witnesses was not based on any authority set forth in [Federal Rule of Evidence 702]," which warrants the granting of a new trial.

The Court informed the parties repeatedly that only exhibits used during the testimony of a witness would be admitted into evidence and that only exhibits admitted into evidence would be provided to the jury during deliberations. This is standard trial procedure. The Plaintiffs have cited to no law in support of their position. It is unclear to the Court which exhibits the Plaintiffs think should have gone to the jury even though no witness referenced the exhibit in his or her testimony, or how such an exhibit could be helpful to the jury. The Court offered the Plaintiffs the opportunity to proffer any evidence they thought should have been admitted into evidence but which was not. The Plaintiffs

---

[85] *Stockstill v. Shell Oil Co.*, 3 F.3d 868, 872–73 (5th Cir. 1993); *United States v. Winkle*, 587 F.2d 705, 710–11 (5th Cir.), *cert. denied*, 444 U.S. 827 (1979).
[86] R. Doc. 871-1 at 18.
[87] FED. R. EVID. 402.

have cited to no specific exhibit that was excluded that in any way prejudiced either Plaintiff.

As the Court did not abuse its discretion, this issue does not provide a basis for granting a new trial.

### j. *Evidence Regarding OLB's Lack of Insurance Coverage for Punitive Damages*

According to Plaintiffs, "OLB elicited testimony from its corporate representative, Craig Pierce, that it was difficult to procure insurance coverage for punitive damages."[88] Plaintiffs cite Federal Rule of Evidence 411, arguing that OLB should have been aware that "evidence that a party lacks insurance is inadmissible if it constitutes an 'improper plea of poverty.'"[89] Here, Plaintiffs argue Pierce's testimony "was not relevant to any fact in issue and served no discernable proper purpose."[90] Plaintiffs contend "OLB's prejudicial references to insurance coverage prompted Raymond Howard's counsel to request a mistrial, which the Court denied."[91] According to Plaintiffs, "[s]uch denial was reversible error, and a new trial should be granted on all issues."[92]

Counsel for OLB asked its corporate representative a single question regarding the lack of insurance coverage to OLB in connection with Plaintiffs' punitive damages claim.[93] The Court denied Plaintiffs' request for a mistrial but offered to give a limiting instruction to the jury regarding the availability of insurance coverage for punitive damages. Plaintiffs

---

[88] R. Doc. 871-1 at 20.
[89] R. Doc. 871-1 at 20.
[90] R. Doc. 871-1 at 20.
[91] R. Doc. 871-1 at 19–20.
[92] R. Doc. 871-1 at 19–20.
[93] R. Doc. 860 at 127 (Trial Transcript, 2/17/16).

refused the offer of a limiting instruction. An isolated mention of insurance coverage during trial does not merit re-trying a case.[94]

As the Court did not abuse its discretion, this issue does not provide a basis for granting a new trial.

### k. *Dr. Kevin Greve's Expert Testimony*

OLB retained Dr. Kevin Greve as an expert in neuropsychology. Prior to trial, Plaintiffs filed a motion *in limine* to limit or exclude Dr. Greve's proposed testimony under Federal Rule of Evidence 702 and *Daubert*. The Court denied the motion *in limine* and permitted Dr. Greve to testify at trial as an expert in the field of neuropsychology.[95] In their motion *in limine*, and again now, Plaintiffs argue Dr. Greve's "methodology failed to meet the expert admissibility standards" under Federal Rules of Evidence 702 through 705 because Dr. Greve "destroyed the cutoff scores used to determine the error rates of the neuropsychological tests he administered to Plaintiffs, and he failed to memorialize the data comprising the foundation for his opinions that Plaintiffs were 'malingering.'"[96] Plaintiffs also contend "Dr. Greve selected the cutoff scores after obtaining Plaintiffs' raw test data," which "expediently benefits a predetermined conclusion that someone is 'malingering.'"[97]

An additional ground of Plaintiffs' discontent with Dr. Greve is that his opinions that Plaintiffs were malingering "constituted an irrelevant, impermissible commentary on Calvin and Raymond Howard's supposed character traits of untruthfulness."[98]

---

[94] *See, e.g., Stultz v. Bellagio*, No. 56164, 2011 WL 4527928, at *5 (Nev. Sept. 29, 2011); *Adams Labs., Inc. v. Jacobs Eng'g Co., Inc.*, 761 F.2d 1218, 1226–27 (7th Cir. 1985) (quoting *Kitsch v. Goode*, 362 N.E.2d 446, 451–52 (Ill. App. Ct. 1977)) ("[T]o constitute reversible error, references to insurance coverage must be 'due to some misconduct or improper remarks or questions of counsel, ofttimes repeated, and calculated to influence or prejudice the jury.").

[95] R. Doc. 812.

[96] R. Doc. 871-1 at 20–21.

[97] R. Doc. 871-1 at 21.

[98] R. Doc. 871-1 at 21.

In sum, Plaintiffs argue they were prejudiced by the Court's ruling permitting Dr. Greve to testify as an expert witness in this action, which prejudice warrants the granting of a new trial.

The Court has great discretion in determining whether to exclude expert witnesses under *Daubert*.[99] The Court finds that its denial of Plaintiffs' motion *in limine* with respect to Dr. Greve did not constitute prejudicial error or cause the trial to be unfair.[100]

As the Court did not abuse its discretion, this issue does not serve as the basis for granting a new trial.

### l. *OLB's Liability Expert; Leading Questions*

Plaintiffs argue that it was error for the Court to, over their objection, "repeatedly permit Offshore Liftboats to elicit testimony from its liability expert witness, Robert Watson, regarding substantive matters through leading questions during direct examination."[101] According to Plaintiffs, OLB's asking Watson leading questions violated Federal Rule of Evidence 702, which they contend does not "expressly permit leading questions of experts on substantive matters."[102] Plaintiffs maintain the ability of OLB to ask leading questions of Watson "substantially prejudiced" them, "as the string of leading questions allowed Offshore Liftboats to simply use its liability expert as a sounding board for its own theory of the case without subjecting the witness to meaningful, contemporaneous credibility evaluations by the jury."[103] Because of the alleged prejudice they were subjected to, Plaintiffs contend a new trial is warranted.

---

[99] *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) (internal quotation marks omitted) ("Trial courts have wide discretion in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence."). *See also New Orleans City v. BellSouth Telecomm., Inc.*, 728 F. Supp. 2d 834, 859 (E.D. La. 2010).
[100] The Court's Order & Reasons denying Plaintiffs' motion *in limine* with respect to Dr. Greve is found at Record Document 812.
[101] R. Doc. 871-1 at 22.
[102] R. Doc. 871-1 at 22.
[103] R. Doc. 871-1 at 23.

The Court has discretion in deciding the manner in which the examination of witness is conducted. The Court allowed leading questions to be asked of expert witnesses for the Plaintiffs and Defendants.

As the Court did not abuse its discretion, this issue does not provide a basis for granting a new trial.

> m. *OLB's Cross-Examination of Dr. Larry Pollock*

Dr. Larry Pollock testified as Calvin Howard's treating neuropsychologist. Plaintiffs note that, "[d]uring cross-examination, Offshore Liftboats questioned Dr. Pollock about an order issued by the Southern District of Texas in Houston in a case unrelated to the extant proceeding."[104] Apparently Dr. Pollock was retained by the defense team representing R. Allen Stanford, a high-profile criminal defendant charged with running a Ponzi scheme, to conduct a neuropsychological evaluation of Stanford.[105] OLB asked Dr. Pollock on cross-examination about the Southern District of Texas's finding that Stanford was competent to stand trial, which effectively rejected Dr. Pollock's opinion that Stanford was not competent to stand trial.

Calvin maintains the Court erred in permitting this line of questioning. First, according to Calvin, the evidence (the order from the Southern District of Texas) was not disclosed to him before trial.[106] Second, Calvin contends that, to the extent the Court permitted the examination under the guise of impeachment, in which event the evidence need not be disclosed, this was error.[107] Calvin contends the Southern District of Texas's order did not constitute a prior inconsistent statement, and furthermore, Calvin did not

---

[104] R. Doc. 871-1 at 23–24.
[105] R. Doc. 871-1 at 24.
[106] R. Doc. 871-1 at 24.
[107] R. Doc. 871-1 at 24.

open Dr. Pollock up to such questioning on direct.[108] Calvin also argues that, if the Court concluded that the court's order was evidence of Dr. Pollock's truthfulness or lack thereof, the evidence was extrinsic evidence of a collateral matter and, thus, its use was not proper. Lastly, Calvin cites Federal Rules of Evidence 402 and 403 and argues that this evidence was irrelevant and, even if relevant, had minimal probative value which was substantially outweighed by the danger of unfair prejudice.[109]

The Court allowed this line of questioning and the related exhibit as proper impeachment evidence under *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513 (5th Cir. 1993). By placing the issue of fatigue and pain in evidence during direct examination, plaintiff Calvin Howard opened the door to OLB being allowed to impeach Dr. Pollock with previously rejected testimony on these same issues.[110] The Court found that the probative value of the evidence outweighed any prejudicial effect.

The Court did not abuse its discretion, and this issue does not provide a basis for a new trial.

### n.  *OLB's Closing Argument*

During closing argument, Plaintiffs contend counsel for OLB "made numerous improper jury arguments that resulted in substantial injustice to Plaintiffs," which warrants the granting of a new trial.[111] First, Plaintiffs point to allegedly improper comments made by counsel for OLB with respect to the significance of Captain James Godwin's absence from trial:

> Captain Godwin caused the accident. Now first of all, it should be noted that the man who caused the accident did not come to court to testify. And unlike what counsel told you -- I know counsel told you that he's still employed by

---

[108] R. Doc. 871-1 at 24.
[109] R. Doc. 871-1 at 25.
[110] *See, e.g., DiStefano v. Otis Elevator Co., Inc.*, No. Civ.A. 95-3976, 1997 WL 572895 (E.D. La. Sept. 15, 1997).
[111] R. Doc. 871-1 at 25–26.

> K&K -- he isn't still employed by K&K. If he was, we could have made him come here. But he lives outside of the jurisdiction of this court, and we can't serve a subpoena on him. So we can't compel him to come testify. Ryland also lived outside of the jurisdiction of this court --in fact, the same town that Godwin lived in. Ryland voluntarily came here. Godwin, the man who caused the accident did not; and now we're using his video deposition.[112]

Plaintiffs also point to statements made by OLB's counsel regarding counsel's doubts with respect to Captain Godwin's credibility:

> Let's talk a little bit about Godwin for a second. Godwin has got some problems with his credibility. Number one, Godwin testified the boat backed up; and he hit the platform. Remember we had this drawn the day before yesterday by Bob Watson, and there's the orange is what Godwin said happened. It could not have happened that way because everybody saw the boat go forward. Secondly, this guy who supposedly is going to testify that somebody messed up, this is what he drew in his accident report where the vessels were. Then when he gave his deposition, he drew this (indicating). It makes you ask what planet was he on when the accident happened? If the day of the accident, he thinks it happened this way; and everybody, including him, later says it happened this way, what planet was he on the night when this allegedly happened?[113]

Lastly, Plaintiffs point to statements that counsel for OLB made with respect to the credibility of Calvin's treating physicians:

> You'll remember that during Dr. Axelrad and Pollock's testimony, we talked about Allen Stanford, the Ponzi scheme criminal who ended up going to jail for more than a hundred years -- the same guy that Lilly, Axelrad and Pollock tried to get off, tried to argue that he was so brain-injured that he couldn't stand trial.[114]

As a whole, Plaintiffs argue that these statements made by OLB's counsel during closing argument were inflammatory and that such inflammatory statements caused a substantial injustice to Plaintiffs immediately prior to the submission of the case to the jury.

---

[112] R. Doc. 871-1 at 26.
[113] R. Doc. 871-1 at 26−27.
[114] R. Doc. 871-1 at 27.

"A motion for new trial premised on improper arguments by counsel should only be granted when improper closing argument irreparably prejudices a jury verdict or a jury fails to follow instructions."[115] "A new trial is warranted only if the opposing party shows that it was sufficiently prejudiced considering all the facts and circumstances of the case."[116]

The Plaintiffs have not shown that improper arguments by counsel irreparably prejudiced the jury verdict or that the jury failed to follow directions as a result of improper arguments. The statements during closing argument do not provide a basis for granting a new trial.

### o. *Alleged Cumulative Errors of the Court*

Plaintiffs' final argument in support of their motion for new trial is that, "[t]o the extent the Court finds that the above errors, in isolation, do not justify a new trial, . . . the Court's cumulative errors warrant a new trial."[117] Plaintiffs contend "the cumulative errors outlined above fatally infected the trial and violated the trial's fundamental fairness" such that a new trial should be granted.[118]

Because the Court finds that it did not abuse its discretion and did not commit errors in the trial of the case, there are no cumulative errors that warrant a new trial. If there were errors in the trial, they did not fatally infect the trial or violate the trial's fundamental fairness such that a motion for new trial should be granted.

---

[115] *Baisden*, 693 F.3d at 509 (internal quotation marks omitted) (citing *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.3d 613, 619 (5th Cir. 1988)).
[116] *Facille*, 2015 WL 5017012, at *10 (citing *United States v. Jefferson*, 258 F.3d 405, 412 (5th Cir. 2001)).
[117] R. Doc. 871-1 at 27–28.
[118] R. Doc. 871-1 at 28.

## <u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs Calvin Howard and Raymond Howard's renewed post-trial motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and, in the alternative, a motion for new trial under Rule 59(a), is **DENIED.**[119]

**New Orleans, Louisiana, this 27th day of June, 2016.**

_Susie Morgan_

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[119] R. Doc. 871.